H. MELISSA WHITON, as Administratrix, etc., et al., Respondents, *v.* JACOB H. SNYDER, Appellant.

Under and by virtue of the statutes of this State (Chap. 200, Laws of 1848, chap. 140, Laws of 1860, and chap. 172, Laws of 1862), recognizing the right of a married woman to take and hold property as her own, as well where it is a gift in good faith and fairly made to her by her husband as where she acquires title from other sources, the general rules of law as to ownership of property apply to her unaffected by the old disabilities of the marital relation.

A wife's separate and personal possession therefore of specific articles of personal property draws after it the presumption of ownership.

The character and use of articles forming part of the paraphernalia of a wife and actually used by her, although purchased by the husband, imply a personal gift and a separate possession, and in the absence of other facts contradicting the inference, establish her title.

As to other articles, such as household furniture and goods adapted to the use·and used by the family generally and in their common possession, there is no presumption of ownership by the wife.

Her title to such articles, therefore, must be established by showing an executed gift to or purchase by her or a separate and personal possession.

As to property in the wife's possession, although no date of acquisition is shown, there is no legal presumption that she obtained it prior to the act of 1848, although she was married before that time; on the contrary the presumption is she acquired it at a time when absolute ownership was possible.

Even if the former presumption exists, the wife had an equitable title which under said acts ripened at once into a legal right and vested the property in her.

*Curtis* v. *D. L. & W. R. R. Co.* (74 N. Y. 116), distinguished.

Where it appeared that a wife held a certificate of deposit payable to her order, and she had received the interest thereon, *held*, that, in the absence of other evidence, her title to the certificate and to the debt represented thereby was sufficiently established.

In proceedings before a surrogate, instituted by plaintiff, as administrator of the estate of a deceased wife, defendant, who was at the time administrator of the estate of the husband, was examined as to his possession of any articles belonging to the estate of the wife. On that examination he swore that he had a carriage and clock belonging to said estate. In this action brought to recover property alleged to belong to said estate including the carriage and clock, defendant's testimony was offered in evidence ; it was objected to on the ground that defendant, being administrator of the husband's estate, could not bind that estate by his admissions. *Held* untenable ; 1st, because he was sued as an individual and

no claim was made against him as administrator or against the estate he represented; 2d, if because he was administrator the proceeding for his examination must be treated as one against the estate he represented, his admission was made while in the performance of an act relating to the estate and was competent as part of the *res gestæ*.

The complaint alleged a demand and refusal ; this was not denied by the answer ; the date of the demand was not shown; the referee allowed as damages for the detention of the certificates the difference between lawful interest and that paid upon the certificates, from the time of defendant's examination before the surrogate. *Held* no error.

After the clock had been described by witnesses, a witness who dealt in such articles, but who had never seen the clock in question, was asked a hypothetical question as to its value, it being described in the question as testified to by the other witnesses; this was objected to and objection overruled. *Held* no error.

(Argued February 27, 1882 ; decided March 14, 1882.)

APPEAL from judgment of the General Term of the Supreme Court, in the third judicial department, entered upon an order made November 14, 1881, which affirmed a judgment in favor of plaintiff, entered upon the report of a referee.

This action was brought by plaintiff, as administrator of the estate of Elizabeth Snyder, deceased, to recover possession of various articles of personal property, consisting of articles of wearing apparel, two certificates of deposit payable to her order, with interest at the rate of four per cent after the first year, also a carriage, a clock and a cabinet picture. Defendant claimed that the property belonged to the estate of his father, who was the husband of plaintiffs' intestate, and who died subsequent to her death, of which estate defendant was administrator.

The referee decided that said articles belonged to the estate of plaintiffs' intestate, and that plaintiffs were entitled to the possession thereof. He allowed as damages for the unlawful detention of the certificates of deposit, two per cent per annum on the amount thereof, from June 2, 1879, up to the date of his report, that being the difference between the interest payable upon the certificates and the lawful rate.

The further material facts are stated in the opinion.

*R. A. Parmenter* for appellant.   The referee erred in re-
fusing to find, as requested by the defendant, that under the
proofs the presumption of law is that all the property came to
plaintiffs' testatrix anterior to the married woman's act of
1848, except the articles of wearing apparel, paraphernalia and
carriage, purchased by her husband since that date.  (*Savage*
v. *O'Neil,* 44 N. Y. 298 ; *Jacox et al.* v. *Caldwell,* 51 id. 398 ;
*Ryder* v. *Hulse,* 24 id. 372.)   When a gift of personal prop-
erty from husband to wife is claimed, it must be proved to
have been actually made.  A gift will not be presumed from
the fact that the property was jointly used by husband and
wife.  (*Curtis* v. *D. L. & W. R. R. Co.,* 74 N. Y. 122.)  As
between the administrator of the husband and the legatee of
his wife, the articles of wearing apparel, upon the evidence in
the case, should have been awarded to the former.   (Reeve's
Domestic Rel., chap. 6.)   If such wearing apparel belonged to
the testatrix, the title to the same under the will vested in
Emily Lane, and she, and not the plaintiffs, is entitled to the
possession thereof.  (*Stall* v. *Wilbur,* 77 N. Y. 158–163.)
The legal title to the property in question could not be
changed or impaired by the admission of either the plaintiffs
or defendant.  (*Elwood* v. *Deifendorf,* 5 Barb. 406–7 ; *Church*
v. *Howard,* 79 N. Y. 415.)

*James Lansing* for respondents.   The testatrix, although
married before 1848, was not thereby disqualified from holding
the legal title to property subsequently acquired from a source
other than from the husband, and since the passage of the act of
1860, as amended in 1862, she might take title to personal property
direct from her husband.  (Laws of 1862, chap. 172 ; *Mack* v.
*Mack,* 3 Hun, 323 ; *Ransom* v. *Penn. R. R. Co.,* 48 N. Y.
216.)  Since the act of 1862, husband and wife, dealing together
as other parties may, are governed by the same rules, and the
language and conduct of the parties which would authorize the
inference of a gift, conveyance, or relinquishment of a right as
between other parties would be sufficient in the case of
husband and wife.  (*Turner* v. *Brown,* 6 Hun, 332 ; *Wasser-*

*man* v. *Willett*, 10 Abb. Pr. 63.) Since the act of 1862, the acts and declarations of the parties authorized the inference, that there had been a relinquishment of the marital right upon the part of defendant's intestate. (*Syracuse C. P. Co.* v. *Wing*, 12 N. Y. W. D. 396.) This admission, made by defendant as to the certificates, under the circumstances, is admissible against him individually, and also in his representative character. It was part of the *res gestæ*. (*Church* v. *Howard*, 79 N. Y. 415.) The declarations of a testator or intestate are as a universal rule admissible against his personal representative. (*Smith* v. *Sergent*, 2 Hun, 107 ; *Hackley* v. *Warren*, 62 Barb. 666.) The acts and declarations of the husband are admissible to show title to property in his wife, as against those claiming title through him. (*Turner* v. *Brown*, 6 Hun, 332.)

FINCH, J. The title to certain personal property is here in dispute between the representatives of the husband and wife respectively, and depends so largely upon the presumptions with which we approach the facts, as to compel their consideration and settlement at the outset of the inquiry. The property in dispute consisted of two certificates of deposit for $2,300, payable to Elizabeth Snyder, the wife; a carriage; an old clock ; three articles of the wife's wearing apparel ; and a cabinet picture of herself. At the date of her death all these things were in her possession, but whether as her sole and separate property, or as that of her husband, intrusted merely to her custody or use in virtue of the marital relation, becomes a question about which the parties differ very widely, and the determination of which is quite essential to the case.

It has long been the law that the possession of personal property draws with it a presumption of ownership. At common law, that presumption utterly failed in the case of a married woman, because as against her husband, asserting his marital rights, she could not own such property. (Bl. Com., Bk. 2, chap. 29, p. 435 ; *Curtis* v. *Del. L. & W. R. R. Co.*, 74 N. Y. 122.) The marriage vested in the husband the right to reduce to his possession and ownership the wife's choses in action, and

gave him the title to her personal chattels at once and abso-
lutely. (*Jaycox* v. *Caldwell*, 51 N. Y. 398.) And this pro-
ceeded upon the ground, which was always more logical than
true, that the very being and existence of the woman was
suspended during the coverture, or entirely merged or incor-
porated in that of the husband. But unjust rules slowly give
way before advancing civilization.

Very early the hardship of denying to the wife some de-
gree of property in or control over her personal apparel, and
the ornaments befitting her station, was felt and appreciated.
It seemed harsh and rude that the husband should own them
as he did the collar of his dog, or the harness of his horse,
and some modified ownership and control was given to the
wife, though still largely subservient to the title of the hus-
band. The familiar phrase, borrowed from the civil law,
"*bona paraphernalia*," became the settled description of the
wife's personal clothing and ornaments, and indicated in them
a modified property recognized and protected to some moderate
extent. (Bl. Com., *supra ;* 435 ; 11 Vin. Abr. 178.) The husband
could not devise them away, and after his death the widow could
hold them as against his executors or legatees, but was obliged
to surrender them to his creditors where there was a deficiency
of assets. Even the presents given by him to her before mar-
riage, such as jewels, rings and pictures, could not afterward
be saved from his creditors, although Lord HARDWICKE thought
such a case was "unfortunate and very hard." (*Ridout* v. *Earl
of Plymouth*, 2 Atk. 104.) And the paramount title of the
husband was still preserved, since he could dispose of these
articles absolutely in his own life-time. (*Seymour* v. *Fres-
ilian*, 3 Atk. 358 ; *Graham* v. *Londonderry*, id. 394.)
Our Revised Statutes relaxed somewhat the rule, and gave
to the wife surviving the husband a title to her *paraphernalia*
which his creditors could not assail. (*Curtis* v. *D. L. & W. R.
R. Co., supra.*) This common-law rule recognized the husband's
title, solely from necessity and because the wife could not take.
It practically gave her the use, and protected her in the enjoy-
ment of what was only not actually given, because it could not

be. Even in equity, where a more liberal rule prevailed, the wife's paraphernalia were not considered as a gift to her separate use, because that would enable her to dispose of them absolutely, which was deemed contrary to the husband's intention. (*Graham* v. *Londonderry, supra.*) But the right of the wife, so far as it existed, rested upon the foundation of a gift, where the articles were provided by the husband. That right was described as an acquisition by the wife of a property in the husband's goods, and where it came from him without price or consideration, beyond affection and duty, it was a gift so far as a gift was possible. The separate and personal possession by the wife of articles specially fitted for and adapted to her personal use, and differing in that respect from household goods kept for the common use of both husband and wife, would have drawn after it the presumption of an executed gift, if the property came from the husband, and of the wife's ownership, but for the disabilities of the marital relation. Now that those disabilities are removed, the several existence and separate property of the wife recognized, and her capacity to take and hold as her own a gift in good faith and fairly made to her by her husband established, it seems time to clothe her right with its natural and proper attributes, and apply to a gift to her, although made by her husband, the general rules of law unmodified and unwarped by the old disabilities of the marriage relation. Since the wife may take by gift from her husband as well as from others, and by purchase from any one, her separate and personal possession of specific articles must draw after it the presumption of ownership, and there is no longer reason for making her case exceptional, or excluding her from the operation of the general rule. Her wearing apparel and ornaments, given by her husband, pass into her personal and separate possession. Such is the intent with which they are given. They are made or selected with that view and for that plain purpose; their very character and use implies a personal gift, and a separate possession in which the husband does not share. Such possession of articles adapted plainly to the wife's separate and personal use,

and not that of the husband or family generally, and so actually used by her, in the absence of other facts contradicting the inference, must be held to denote her ownership of the property, either as purchased out of her own means, or given to her by her husband or others.   As to articles of a different character, such as furniture and household goods, adapted to the use of and used by the family generally, and in their common possession, a different rule must apply.   Although specific articles may be spoken of as the wife's, or as got for her, the difficulty of establishing an executed gift by showing a delivery, or a separate and personal possession, remains.   Such cases must stand upon their facts, and can rarely be brought within the range of a presumption of separate ownership.   The title of the wife to her paraphernalia was distinctly recognized in *Rawson* v. *Penn. R. R. Co.* (48 N. Y. 212), and the doctrine there declared also answers a further contention of the appellant in the present case.   The marriage of these parties took place before 1848, and under the old rules applicable to that relation.   It is, therefore, argued that as to the property in the wife's possession, as to which no date or period of acquisition is established by the proofs, the legal presumption is that she obtained it anterior to the act of 1848, and that the referee erred in refusing so to find.   If that presumption existed it would still be true, as the case cited shows, that the wife would have had an equitable title which, under the acts of 1860 and 1862, ripened at once into a legal right, and vested the property in her.   But no such legal presumption attaches.   The property being in the wife's separate and individual possession, at a time when her absolute ownership was possible, the latter presumption arises, and the party who seeks to repel it must prove the acquisition before the statutes relating to married women, and not ask the court to presume it.   (*Savage* v. *O'Neil*, 44 N. Y. 301.)   The discord which the learned referee discerns between the cases of *Rawson* v. *The Penn. R. R. Co.*, and *Curtis* v. *D. L. & W. R. R. Co.* (74 N. Y. 116), exists only as to the fact of a gift.   In the former case it was said to have been established, but in the latter, not.   In the last case no question of title arose as

between husband and wife, and the trunk lost contained the husband's own apparel and that of his child, as well as that of his wife. She was treated as representing the husband, and her possession of the baggage as being his, and the subject of her separate and personal possession of a part of the articles does not appear to have arisen.

The views thus expressed dispose of the questions of title presented in the case before us, except as to the carriage and clock. The money represented by the certificate of deposit, payable to the order of the wife, was her money, held by the bank for her and payable only to her, or upon her direction. When or where she obtained it we do not know, nor is it at all material. It was in her separate and exclusive possession; she received the interest upon it, and it was payable to her alone. The referee was right in sustaining her title to the certificates and the debt represented thereby. The articles of clothing were also hers. It is shown that she bought them and had them in her possession, and they were of such a character as to make that possession personal in her and exclude the inference of possession by the husband or of both in common. The carriage and clock, however, are articles of a different character. We cannot assign either to the personal possession of the wife alone. They were for the common use of both, adapted to such use, and the carriage appears to have been bought and paid for by the husband, while the clock once belonged to the wife's father; but the manner of its transfer, or to whom, does not appear. We should have great doubt about both of these articles but for one fact in the case. It appears that the defendant was brought before the surrogate to be examined as to his possession of any articles belonging to the estate of Mrs. Snyder. On that examination he swore that he had the carriage and clock in question, and that they were the property of the deceased wife. This evidence was objected to and its admission is alleged as error, upon the ground that the defendant was administrator of his father and could not bind the estate by his admissions. (*Church* v. *Howard*, 79 N. Y. 415.) But he was sued as an individual. No claim was made against him as ad-

ministrator, or against the estate which he represented. The inquiry was whether he was in possession of property belonging to the wife's estate. He admitted he had it and promised to return it and set up no claim as representative of his father. The proceeding against him, if he is treated as he was sued, merely as an individual, was one in which his answer was evidence against himself. But if, because he was administrator, the proceeding for his examination must be treated as one against the estate which he represented, and his answer taken in that capacity, then certainly his admission was made while engaged in the performance of an act relating to the estate. He stood there in a legal proceeding, resisting claims to take away property of the estate, and answering legitimate inquiries relating to the subject of his trust, and his admissions were competent and part of the *res gestæ*. (*Church* v. *Howard, supra.*) There was, therefore, before the referee, in these sworn admissions of the defendant, evidence of the plaintiff's title which tended to contradict the inferences from Snyder's purchase of the carriage and his possession of the clock. There was also other evidence, as to the carriage, of declarations of the husband that his wife bought it and it was hers. On this state of the evidence we are not at liberty to resist the referee's finding of title in the plaintiff.

Exceptions were taken to the evidence of damages resulting from the detention of the certificates of deposit, and to the decision of the referee awarding them. It is said that an actual demand was not proved on the trial, nor found by the referee, and no wrongful withholding of the carriage was shown. The complaint, which was sworn to on June 28, 1879, alleges a formal demand and refusal. The answer does not deny and therefore admits it. The date of the demand is not shown further than that it was before the commencement of the action. The referee assumes the 2d of June, when the examination was had before the surrogate, as the date of the demand thus admitted, and allows as damages the difference between the lawful rate of interest and that paid upon the certificates from that date to that of the report. On that occasion the plaintiffs stood in the

attitude of demanding a surrender of this property; the defendant so understood it, for it is proved that he said he shouldn't turn it over unless he was obliged to; and finally through his counsel promised to give it up but did not. We think the damages were properly allowed, and their amount upon the evidence was a question of fact for the judgment of the referee.

Evidence of the witness, Buckley, as to the value of the clock was objected to. He was a dealer in such articles and in decorative art goods, but had never seen the clock in dispute. It was described in a hypothetical question and his opinion of its value asked. The first objection was that the inquiry assumed facts not proved. The contrary was the truth. Every item of the description was sworn to by one or more witnesses. It was said the witness had not seen the clock. That was true, but affected only the weight of his evidence and not his competency. It was objected that the inquiry was not confined to market value. We think it was. And finally his opinion as an expert was questioned. We think he was competent to give an opinion of value, and his answer was properly received.

Some other questions were raised not material to be considered. We discover no error in their disposition by the referee.

The judgment should be affirmed, with costs.

All concur, except RAPALLO, J., absent.

Judgment affirmed.