James J. Bergen, admr. of Caroline E. Van Liew, deceased, et al., appellants,

v.

John L. Van Liew et al., admrs. of Dennis Van Liew, deceased, respondents.

A husband and wife died within a few hours of each other, intestate and without issue. The wife had a separate estate and an income therefrom. A large sum of money in bank-bills was found, part in a pocket-book marked with the initials of the wife's name, part in another pocket-book marked with her father's name, also some gold coin in a bag, and some silver coin lying loose—all secreted in a trunk, marked with the wife's name, to which both had free access, the key usually being kept by the wife. Their deeds, bonds, notes, receipts, insurance policies &c. were also found in the trunk. There was no memorandum or other satisfactory evidence to show the amount contributed by either one to the money so found. *Held*, that it must be equally divided between their respective representatives.

On appeal from a decree advised by Vice-Chancellor Bird, whose opinion is reported in *Van Liew* v. *Galtra, 9 Stew. Eq. 251.*

*Mr. R. V. Lindabury* and *Mr. J. J. Bergen,* for appellants.

*Mr. John Schomp,* for respondents.

The opinion of the court was delivered by

GREEN, J.

The controversy in this cause arises between the representatives of the husband and the representatives of the wife, respecting the ownership of a sum of money found after their death in the house where they had resided together as man and wife for over thirty years. They died within eighteen hours of each other, without issue, and intestate, the wife being the survivor.

The money in dispute is represented by a certificate of deposit for $5,441.48, issued by the National Iron Bank at Morristown, payable to the order of Thomas Galtra and J. L. Van Liew, the first-named a brother of the wife, the other of the husband, who together counted the money and deposited it in the bank after the death of their deceased relatives, and before the grant of administration in either case. Of this fund the sum of $168 was found part in the bar and part in a small box, where it had been placed by a servant, who took charge of it at the request of the husband during his last sickness. Respecting this part of the fund, there can be no contention, as it was clearly the property of the husband, and must go to his representatives.

The residue of the money represented by the certificate, and the only subject of controversy, amounting to $5,273.48, was found in a trunk marked on " the tray," called by the witnesses " the till," with the wife's name, and which was kept in a small room or closet, known as the clothes room, where the clothing of both parties and the bedding used in the house appear to have been stored. The keys both of the trunk and closet were usually kept by the wife, though it appears by the evidence that the husband obtained and used them at will.

The money found in the trunk is claimed by the representative of the wife upon the ground that it was in her separate and personal possession; that it was kept in her trunk, and that the ownership and possession of the trunk drew after them a pre-

sumption of the ownership of the contents and establish a *prima facie* title to the money. The representatives of the husband rest their claim upon the broad ground that the possession of the wife, whether separate or in common with the husband, is the possession of the husband, and that from such possession the law presumes ownership in the husband.

The latter view was adopted by the learned vice-chancellor in the court below (see *9 Stew. Eq. 251*), and the decree appealed from directs the whole fund to be paid to the representatives of the husband.

Both parties, it may be observed, claim title by possession, and each relies almost exclusively upon the alleged nature of the possession and the presumption of ownership arising from it.

The possession of personal property has always been recognized as presumptive evidence of ownership. At common law as between husband and wife this presumption had no existence. As an incident to the marital relation, the possession of the wife was the possession of the husband, and presumptive evidence of ownership in him and not in the wife.

But since the passage of the laws for the better securing of the property of married women, and the liberal construction given to those laws by our courts, the presumption of ownership by the husband of property in the possession of the wife exists only in a modified form and to a limited extent. The sole and separate property of the wife in both her real and personal estate, and the rents and profits thereof, as well as in her wages and earnings, is now recognized by law, and there seems no sufficient reason for excluding her from the operation of general rules of law as to what shall constitute the evidence of her ownership of the property, which the law gives to her. *Whiton* v. *Snyder, 88 N. Y. 299.* When the law declares that the goods of the wife shall be her sole and separate property, as though she were a single woman, it is incongruous to hold that the possession by the wife of property absolutely her own is presumptive evidence of the ownership of that property by the husband.

As between the wife and third persons, the general rules of evidence which protect the husband should in substance be made

Van Liew v. Van Liew.

available for the protection of the wife. *2 Bishop on Married Women* § *140.* Such general rules, however, must, as to their application in controversies between husband and wife, be modified by the peculiar relations existing between them, as well as by the facts in each particular case and the circumstances surrounding it. Mr. Bishop, in his treatise, well observes, " that it is plain in reason that where husband and wife are living together, and using each other's property almost indiscriminately, and then a controversy arises between them as to ownership, little or no weight should be given to the mere fact of possession."

It appears from the evidence in the cause, that the trunk in which the money in controversy was found, although marked with the wife's name, was the common receptacle of the valuables of both husband and wife, there being no safe or other place of deposit for such articles in the house. In the trunk were found (besides the money) a few articles of clothing, two watches, the husband's title deeds, policies of insurance, securities and receipts; also the wife's separate securities, consisting of bonds, mortgages and notes. The bonds, mortgages, and securities of both parties were tied together in one package. The money consisted of United States notes, bank bills, fractional currency, gold and silver coin and nickels.

Of the notes and bills (which were principally in packages with paper bands around them, as if carefully counted) $2,655 was found in a pocket-book marked on the inside with the initials of the wife's name, and $670 in a pocket-book marked with the name of her father; the sum of $1,307.50 in gold coin was in a bag by itself; and of the silver, some was in bags, and some, with the nickels and a few gold coins, lying loose in the bottom of the trunk.

The evidence further shows that the parties lived most amicably together upon the best of terms, and that they both had access to and exercised a common control over the common depository where their valuables were concealed. The husband kept a country tavern, in the management of which he was assisted by his wife, and from the profits of which they derived

their living.  The wife had for several years a small separate estate, from which she received some income.  They were of parsimonious habits, reserved dispositions, timid about investments, and, so far as can be ascertained, they made the trunk in question a place of deposit for their common savings, as well from the business of the husband as from the separate income of the wife.

Under these circumstances, there is no presumption of separate ownership either in husband or wife from possession.  The only fair and reasonable inference is that the moneys of these parties were mingled together in the trunk with the knowledge and assent of both.  There is no allegation or pretence of fraud in either party, or that the commingling was the result of negligence, inadvertence, or accident.

It is the undisputed rule both of the civil and the common law that where the goods of two or more persons are so intermixed that they can no longer be distinguished, the owners, if the intermixture be by consent, have an interest in common in proportion to their respective shares.  *Inst. 2, 1, 27, 28 ; 2 Bl. Com. 405 ; 2 Kent 364; Story on Bailments* § *40.*

This then is the case of a common fund, from which both parties were entitled to take out their respective contributions, and the representatives of each have now the same right, provided the several contributions of their respective intestates to the common fund can be definitely ascertained.  But upon this vital point the case presents no satisfactory testimony, and the little we have is of a negative rather than a positive character.

It is clear that both parties were in receipt of funds peculiarly their own, the husband from the profits of his business, the wife from the income of her separate estate, and that both had access at will to the only depository in the house for their valuables and money.  But so secretly was that depository visited, and so carefully was the hoarded treasure guarded, that the very fact of its existence was neither known nor suspected by the nearest relatives of either husband or wife.  No human eye saw a single dollar either placed in the trunk or withdrawn from it, though the weight of testimony is to the effect that the wife ordinarily acted as custodian, keeping the keys, and on several occasions

41

receiving money from her husband and procuring it for him at his request when needed.

The mouths of both parties are closed in death. No account or memorandum of any kind was found in the common receptacle or elsewhere to show their respective contributions to the fund, or to serve as a basis for its division. We have no data whatever for estimating the amount either of the husband's income or his savings. As showing the extent of the wife's interest in the fund, it is reasonably clear that she received from her father's estate $861.42 in cash, which remained uninvested, she having no other securities at her death than those originally received by her. She further received on her securities about $300 of interest. And before she received any part of her separate estate, the husband requested a neighbor to have exchanged for his wife between $200 and $300 of Somerset Bank money, making an aggregate of about $1,400 shown to have belonged to the wife. Beyond this, all the evidence tending to show ownership of the wife is vague and uncertain. There was an attempt to prove that she participated to some extent in the profits of the business, in that her husband on several occasions handed her pieces of gold, but whether they were intended as gifts or were delivered to her as the husband's agent to put safely away, does not appear. So also the alleged handing of a bag of gold to the wife, with the the remark, " This is yours, Liz; this is what I owe you "—when the money was not counted, nor the amount stated, nor a receipt given, nor the nature of the debt mentioned, nor does it appear that the bag was even opened in the presence of the witness, so that the contents might as well have been in reality silver, or nickels, or copper, as gold.

There being thus no satisfactory evidence of the amounts respectively contributed by the parties to the common fund, and no certain basis for its division, and each equally culpable for not keeping some account or statement of their respective interests, the only equitable solution of the difficulty is the equal division of the fund in controversy. This view of the case is further supported by the following considerations:

Where two persons hold either real or personal estate in joint

tenancy or in common, the presumption, in the absence of evidence to the contrary, is that they hold in equal shares or moieties. If two persons are shown to be partners they are presumed to share equally in profits and losses until the contrary be shown.

The commingling of goods by consent necessarily presupposes some agreement or understanding between the parties as to the terms upon which the intermingling was made. It may reasonably be inferred from the relations between these parties, from the manner in which they lived, from their confidence in each other, and from the fact that neither kept any account or statement of the transactions, that the parties themselves considered this a common fund in which each had an equal interest and to which each contributed about an equal share. Probably no division was ever contemplated or thought of by either.

The fact that $2,655, being $18 only in excess of a moiety of the fund in dispute, was found in a pocket-book marked with the initials of the wife's name, was urged as evidence having some weight, though certainly very slight, in favor either of giving the wife that amount or making an equal division.

The equal division of the fund is also sanctioned by the familiar maxim that "Equality is equity." The fund belongs to two parties. There is no certain or satisfactory basis for a division of the mass upon any other principle, and an equal division will best subserve the ends of justice and violate no settled rule of law.

The decree should be reversed and the record remitted with instructions for a division of the fund in accordance with the views above expressed, each party to pay his own costs both in this court and in the court below.

*Decree unanimously reversed.*