ELIZABETH PLOHN, Plaintiff, *v.* CHARLES PLOHN, Defendant.

Supreme Court, Trial Term, New York County, October 21, 1954.

*Nathan Coplan* and *Milton Pollock* for defendant.
*Leo A. Greenbaum* for plaintiff.

WALTER, J. The parties hereto were married in May, 1940. Plaintiff wife left the marital home, a two-and-a-half-room apartment at 215 East 73rd Street, about 1951, with what, I must assume, was ample justification, because she later obtained in this court, in June, 1954, a judgment of separation with alimony of $1,400 per month.

In this action she asserts that the defendant husband wrongfully converted to his own use various items of property which she asserts were hers (i. e. the household furniture and furnishings left in the marital home, certain articles of jewelry said to have been given to her by defendant, 7,500 shares of stock of General Acceptance Corporation, formerly named General Phoenix Corporation, a miscellaneous group of less than 100-share lots of shares of stock of eleven different corporations enumerated in Paragraph 6 of her second amended complaint, and 300 shares of stock of General Finance Corporation allegedly given to her by her sister, Mary Tobin), and she here seeks to recover the value thereof.

At the commencement of the trial I allowed plaintiff to amend her complaint so as to pray for a return of the property allegedly converted or for the value thereof but, while, as a matter of pleading, that gives the action the appearance of an action of replevin in which plaintiff might recover either the property or the value thereof, the rule of substantive law is that having alleged and elected to sue for conversion, plaintiff, in effect, forced the property upon defendant and made it his, and must now be content with a money judgment for the value thereof. (*Allen* v. *Fox*, 51 N. Y. 562, 565; *Pierpoint* v. *Farnum*, 234 App. Div. 205, 207, revd. on other grounds 260 N. Y. 26; and see, also, *Terry* v. *Munger*, 121 N. Y. 161.)

Defendant was a stockbroker, and for most of the period during which he and plaintiff lived together he was a partner in the Stock Exchange firm of Newborg & Company. He told plaintiff he wanted to open an account for her to trade in stocks and make money for her. Accounts were then opened in plaintiff's name with Newborg & Company and with Continental Bank & Trust Company, but plaintiff gave defendant power of attorney which vested in him complete power and authority to handle and manage those accounts, and defendant did, in fact, handle and manage them. Stocks were bought and sold, money was borrowed, the stocks were pledged as security for the repayment of the money borrowed, defendant paid off some of the loans by the use of his own money and, in some instances, when some of the stocks purchased became free of pledge, the certificates representing them were taken out of the accounts

and delivered to plaintiff, but no certificate representing any of the shares of stock involved in this action ever was delivered to plaintiff, and there is no evidence that any of plaintiff's own money ever was used in the acquisition of any of the shares of stock here in question.

Defendant's statement back in December, 1941, that he wanted to open an account for plaintiff, trade in stocks and make money for plaintiff was, at most, a declaration of a conditional intention to give something to plaintiff in the future, and was not, of itself, a gift of anything or even an unqualified promise to make a gift. The opening of the accounts in her name did not, of itself, make her the owner of the stocks which were purchased and placed in the accounts, or give her possession or control of those stocks, or make her the owner of the dividends paid thereon. To the extent that stocks acquired by defendant's operation of the accounts ultimately were freed from the obligations of the accounts and taken out and delivered to plaintiff, plaintiff concededly became the owner of those stocks but, I repeat, those stocks are not the stocks here in question.

Even if some of plaintiff's own money had gone into the account (and for all purposes of this decision, I assume that some of plaintiff's money was used in the acquisition of the stocks here in question) that would not make her the owner of such stocks. It would, at most, give rise to some right to require an accounting as to the money of plaintiff which was so used.

On July 17, 1951, the miscellaneous group of odd lot shares enumerated in Paragraph 6 of the second amended complaint were held by Newborg & Company, and on that day the certificates representing those shares were delivered by Newborg & Company to defendant. If defendant had then delivered those certificates to plaintiff with the intention of making a gift thereof to her, she then would have become the owner of the shares, but defendant never delivered them to plaintiff, and plaintiff never had them in her possession or under her control and she, hence, never became the owner of them.

On August 29, 1951, the 7,500 shares of General Acceptance Corporation were held by Newborg & Company against a debit balance of $25,173.80 and on that day defendant paid Newborg & Company that $25,173.80, and took into his possession the certificates representing the 7,500 shares. Those certificates, it is true, were in plaintiff's name, but she never had had them in her possession or under her control, and there is a complete lack of any evidence that she ever had, in fact, acquired any ownership of them by gift, purchase or otherwise.

When defendant got the certificates for those 7,500 shares from Newborg & Company on August 29, 1951, he did not deliver them to plaintiff but, on the contrary, surrendered them to the transfer agent of the issuing corporation and obtained the issuance of new certificates in his own name. To obtain the issuance of the new certificates to him, defendant signed plaintiff's name to a stock transfer power without disclosing that it was not plaintiff but himself who signed it, but whether or not that was strictly legal or proper need not be considered, for whether legal and proper or not is, at most, a question between defendant and the transfer agent and does not affect any right of plaintiff in question in this action.

I thus conclude that there is no evidence whatsoever that plaintiff ever owned either the miscellaneous collection of odd lot shares, or the 7,500 shares of General Acceptance Corporation, and the motion to dismiss plaintiff's first cause of action, accordingly, must be granted.

The 300 shares of General Finance Corporation were in a brokerage account of plaintiff's sister, Mary Tobin, in January, 1947, when Miss Tobin signed a letter, dated January 4, 1947, addressed to plaintiff stating, " I am giving you 300 shares of General Finance Corporation as a gift." That letter, however, obviously, was not delivered to plaintiff, or to anyone for her, because plaintiff admits that she knew nothing about this alleged gift from her sister to her until 1951. I think, therefore, that the alleged and attempted gift to plaintiff of those 300 shares of General Finance Corporation must fail because of the absence of any delivery to her of either the stock itself or any instrument of gift.

As plaintiff thus has failed to show that she ever acquired ownership of this stock, it is unnecessary to decide whether or not plaintiff then made a valid gift of the stock to defendant by means of a letter to him of January 8, 1947.

The motion to dismiss plaintiff's third cause of action, accordingly, must be granted.

As to the household furniture and furnishings claimed by plaintiff in her fourth cause of action, consisting of the furniture and furnishings of the marital home left there by plaintiff when she left, and now being used by defendant, who continues to reside in the apartment, I am of the opinion that the correct rule of law is that where a husband brings his own property to the marital home as furniture and furnishings thereof, and also where he buys such furniture and furnishings and places them in the home, and also where a wife brings her own property to

the marital home as furniture and furnishings thereof, and also where she buys such furniture and furnishings and places them in the home, and also where relatives or friends give wedding presents of household furniture and furnishings, or of money with which such furniture and furnishings are purchased, the only inference which can be drawn, in the absence of affirmative evidence of a different intent, is that all the furniture and furnishings so supplied to the home are so supplied for the joint use, comfort and benefit of both husband and wife, and that neither spouse thereby acquires any title or ownership which entitled either to take the articles from the home or exclude the other spouse from joint use and benefit thereof.

When the spouses separate and the marital home is broken up so that joint use of the furniture and furnishings becomes impossible there, of course, occurs an event which (it must be assumed in the absence of evidence to the contrary) was not contemplated by any of the parties involved and as to which no actual intent ever existed. By that event, motives and purposes, of course, are frustrated, but the happening of that event is not, in any way, the breach of a condition upon which the articles were supplied and there, hence, is not applicable to such furniture and furnishings the rule which was applied with respect to engagement rings before the Legislature abolished actions based upon breach of contracts to marry. (*Wilson* v. *Riggs,* 243 App. Div. 33, affd. 267 N. Y. 570; *Beck* v. *Cohen,* 237 App. Div. 729; *Hutchinson* v. *Kernitzky,* 23 N. Y. S. 2d 650; *Andie* v. *Kaplan,* 288 N. Y. 685; *Josephson* v. *Dry Dock Sav. Inst.,* 292 N. Y. 666; *Bates* v. *Engelman,* 201 Misc. 288; *Splendore* v. *Guglielmo,* 205 Misc. 943.) I have arrived at this conclusion after reading and considering, among other discussions, *Avnet* v. *Avnet* (204 Misc. 760); *Wainess* v. *Jenkins* (110 Misc. 21); *Fitch* v. *Rathbun* (61 N. Y. 579); *Whiton* v. *Snyder* (88 N. Y. 299); *Matter of McNamara* (138 Misc. 526); *Matter of Spingarn* (111 N. Y. S. 2d 172); *Young* v. *State* (95 S. E. 478 [Ga.]); *Smith* v. *Berman* (68 S. E. 1014 [Ga.]); *Le Blanc* v. *Sayers* (168 N. W. 445 [Mich.]), and *Notes* v. *Snyder* (4 F. 2d 426 [Ga.]).

I realize that the practical result of this view is that the spouse who moves out of the marital home, even justifiably, thereby loses the right he or she had to joint use and benefit of the furniture and furnishings, and that the spouse who remains in the home, in effect, thereby gains a right of exclusive use and possession which he or she did not have while the home lasted. But I regard that result not only as the correct result of sound legal reasoning, but, also, as the practically desirable result

because of its tendency to discourage controversy and litigation over the ownership of household furniture and furnishings, and possibly also because of a tendency to discourage breaking up of marital homes.

And the result is not unjust to the spouse who moves out. Every moving out of the marital home by every husband and wife doubtless is a resolution of competing and conflicting desires and aversions and a balancing of the advantages and disadvantages of leaving or staying. It is to be noted, too, that the apparent advantage which this rule gives to the spouse who remains in what was the marital home, after giving the other spouse justifiable grounds for leaving the home, is nothing more than an illustration and application of the general rule that every person seeking to recover property must recover on the strength of his or her title, and not on the weakness of the title of the defendant being sued.

The result of this view in this case is that plaintiff is not entitled to recover either the articles which she herself brought to the marital home or those which she purchased by means of checks on her bank account or those which were purchased with money given as wedding presents or those later given by defendant's parents. All those articles were merely contributions to the marital home and not gifts to plaintiff. Plaintiff testified that there were certain articles which defendant had brought home from cruises and with respect to them had said that they were for her and that he hoped she liked them, but those articles were in the nature of household furniture and furnishings, and were, in fact, used as such, and because of that fact I cannot regard that testimony as enough to take those articles outside of the scope of the rule I have laid down.

It follows that plaintiff has failed to establish any separate individual ownership of the household furniture and furnishings, and the motion to dismiss her fourth cause of action, consequently, must be granted.

Plaintiff wholly failed to adduce any evidence with respect to the jade pendant set forth in her second cause of action, and as to that one item of jewelry, that cause of action also must be dismissed, but as to the remaining items of jewelry set forth in that cause of action, plaintiff has adduced evidence from which a jury could find that there was a valid gift of them to her, and as to those remaining items the motion to dismiss is denied.