Bernard S. Meyer, J.
Plaintiff in this replevin action seeks the return of personal property taken by the individual defendant, plaintiff’s wife, from the Easthampton home owned by plaintiff, and stored by defendant, for the largest part with the corporate defendant, Hamilton, and in some part at the home of some friends of defendant. The property was removed on July 17, 1967. On June 20, 1967, defendant was awarded judgment of separation by the Supreme Court, New York County, the judgment directing, however, that she should vacate the Easthampton house and a New York apartment previously occupied by the parties. Plaintiff contends that the property, consisting of household goods, fixtures, furnishings and objects of art, is his sole property; defendant claims that plaintiff made a gift to her of the property and that it is in any event property in which she is entitled to an undivided one-half interest and, therefore, not property that can be replevied from her. The items in storage from the Easthampton house are set forth as items 1 through 163 of Exhibit 4, and the parties stipulated to prepare and present in evidence a similar inventory of the items that defendant stored with her friends. The latter inventory has not been received by the court but must be, or the trial must be reopened for further proof as to those items, before judgment can be entered. Subject to what that inventory or proof may show to be property owned solely by *90 defendant, plaintiff is granted judgment against both defendants awarding him possession of the personal property free of any claim by Hamilton for storage charges, but his claim for damages is dismissed for failure of proof. Since no money judgment is awarded plaintiff against defendant Hamilton, Hamilton’s cross claim against the individual defendant is dismissed as academic, but the dismissal is without prejudice to such action as Hamilton may be advised to bring against defendant for storage charges.
Defendant claims that plaintiff made a gift of the contents of the house to her on November 22, 1963, the day they moved furnishings into the house. The court finds that no such gift was made and, therefore, dismisses the first affirmative defense. That finding rests on a number of bases. First, defendant’s testimony is inconsistent with the testimony she gave at the separation trial in June, 1967, in response to a question whether she personally owned any of the possessions in the several residences occupied by the parties, that ‘11 have some furniture I brought when I was married; when I married Mr. Manheim 1 brought them into the apartment- — -not too much — a few things.” While she also testified at the separation trial that she did not know if she owned the personalty because she did not know what the laws were, there was no suggestion in any of her testimony that plaintiff had ever made a gift to her of the possessions in the Easthampton house. It is hardly conceivable that she would have overlooked a gift of the entire contents of the house, had it in fact been made. Secondly, defendant’s claim of an outright gift is inconsistent with the method used by her to remove the furniture. She admitted that she had arranged with Hamilton to have the furniture moved to storage some five days before they came, that she told them to come in the late afternoon, and that they did in fact come at 4:30 p.m. and left at about midnight. She gave no explanation for the unusual time selected, but admitted that the gardener, who called plaintiff about midnight on July 17, 1967 and informed him of the removal, normally left the premises at 4:00 p.m. Thirdly, defendant’s testimony is at least partially inconsistent with itself. Her claim is that she said to plaintiff on November 22, 1963 that the house had turned out beautifully and that she was sad about only one thing, that she and plaintiff owned nothing together, that she wanted to share something with him. Since the parties had had prior difficulties over her feeling of financial insecurity and plaintiff’s unwillingness to share his worldly goods with her, it seems unlikely that he would have responded by giving her the contents of the house *91 outright. Although in a sense they would be sharing if he owned the house and she the contents, it seems more probable in view of the prior problems that, had the conversation in fact occurred, his response to her request would have been to share, that is, to put the property in joint names, rather than to give outright. Fourthly, plaintiff categorically denies that the conversation ever occurred.
Defendant presented, in support of her own testimony, the testimony of a friend of hers that plaintiff in discussing with her his problems with defendant said that he had given defendant a million dollars and everything in the Easthampton house. That conversation plaintiff also denies categorically and the testimony is very much weakened, in view of the fact that plaintiff and defendant were living apart at the time it was supposed to have occurred, by the witness’ restatement of the conversation on cross-examination as “ I have given her a million dollars and I left everything in the house for her.” (Emphasis supplied.) The court concludes that defendant has failed to sustain her burden of proof that plaintiff made a gift to her of the property in question (see Matter of Spingarn, 111 N. Y. S. 2d 172 and Wood v. Wood, N. Y. L. J., Feb. 14, 1967, p. 18, col. 2).
Defendant’s second affirmative defense is predicated on the rule that replevin is essentially possessory in nature (Roach v. Curtis (191 N. Y. 387, 390) and that in order to recover plaintiff must show a wrongful detention (Hofferman v. Simmons, 290 N. Y. 449, 456). While not denying that the property was paid for by plaintiff, she points to the facts that she selected or participated in the selection of the disputed items, or most of them, and that they were intended to be and were used by plaintiff and defendant as a family unit. This she claims entitled her to an undivided one-half interest in the property and defeats plaintiff’s right to replevy it from her.
The contention thus advanced would import community property concepts into New York law, at least with respect to jointly used property. Both legislative policy and decisional law are to the contrary. It has long been the policy of this State that “ Property, real or personal * * * owned by a married woman * * # shall continue to be her sole and separate property” (Domestic Relations Law, § 50), that “ A married woman has all the rights in respect to property, real or personal, and the acquisition, use, enjoyment and disposition thereof * * * as if she were unmarried” (General Obligations Law, § 3-301, subd. 1) and that as to joint tenancy, tenancy in common and survivorship rights between husband and wife, a ‘ ‘ transaction creating or transferring an interest *92 in personal property ” shall be governed by the same rules as one between “persons not husband and wife” (General Obligations Law, § 3-311). A rule that would create in one spouse a joint tenancy or tenancy in common in property used by both would be clearly inconsistent with the policy of those statutes. An unmarried woman does not invest a third person with either an ownership or a possessory interest in her property simply by allowing that person to use it jointly, nor does joint use by persons not husband and wife of property owned by one of them create any joint or survivorship interest in the other. True it is that the quoted statutes speak primarily to the rights of the woman, but this is simply because they abrogated the common-law rule in favor of the husband (Whiton v. Snyder, 88 N. Y. 299) a rule so strong that until the passage of section 3-311 of the General Obligations Law, unless a contrary intention were shown, the transfer of personal property into the names of both husband and wife gave the wife a right of survivorship only and created no present interest in her, if the property, or the consideration for the transaction, came from the husband (1959 Report Law. Rev. Comm. [N. Y. Legis. Doc., 1959, No. 65] 359).
With but few exceptions decisional law is not to the contrary. Fitch v. Rathbun (61 N. Y. 579) was an action in conversion by plaintiff, the assignee of defendant’s wife, against defendant husband who had sold furniture given to his wife and by her taken into the marital home. Said the court (pp. 581-582): “ The simple appropriation of any portion of her personal property to household use by the husband and wife, or the husband alone, by her consent, does not render it the property of the husband * * * The property assigned was such as, by statute, she was the legal, and not merely the equitable owner, and had the legal right to assign it; and in which the defendant did not, as against her or her assignee, show himself • to have any equitable interest whatever” (emphasis supplied). Whiton v. Snyder (88 N. Y. 299) was a replevin action between the administrator of the wife’s estate as plaintiff and the heir and administrator of the husband’s estate as defendant, over the right to certificates of deposit, a carriage, a clock, and articles of wearing apparel. As to the wearing apparel, the court noted that even at common law the wife’s title to such paraphernalia was recognized. As to the certificates of deposit it held that since they were payable to the wife, were in her possession and she alone received the interest on them, they were her property. As to the “ furniture and household goods, adapted to the use of and used by the family generally, and in their common possession ” the court held (p. 305) that: *93 1 ‘ Although specific articles may be spoken of as the wife’s, or as got for her, the difficulty of establishing an executed gift by showing a delivery, or a separate and personal possession, remains. Such cases must stand upon their facts, and can rarely be brought within the range of a presumption of separate ownership.” Analyzing the facts as to the carriage and the clock, the court noted (pp. 306-307) that neither was in the wife’s personal possession, that they were for common use of both, that the husband had paid for one while the other had belonged to the wife’s father, and that there would be great doubt were it not that defendant admitted that they were the property of the wife and thus furnished evidence of plaintiff’s title which tended to contradict the inferences arising from the husband’s purchase of the carriage and possession of the clock. Judgment awarding plaintiff possession was, therefore, affirmed. Thus, the claim of defendant in the instant case, which is not that she purchased or (except through the alleged gift discussed above) ever had title as a matter of fact to the property in issue, but that she is a joint owner as a matter of law is negated on the law by the Whiton holding. Moreover, she too, like the defendant in Whiton, has admitted (in the separation action) plaintiff’s title and thus contradicted any inference that may arise from joint possession and use (see, also, Kobin v. Kobin, 2 A D 2d 961, 968; Turner v. Brown, 6 Hun 331, 333).
Cases such as Coppola v. Coppola (18 A. D 2d 1004) Brenner v. Legum (46 Misc 2d 552) and Avnet v. Avnet (204 Misc. 760) which hold that wedding gifts intended for the joint use of both husband and wife are the joint property of both are clearly distinguishable from the instant case which is concerned not with wedding gifts but with property purchased long after the parties married. Plohn v. Plohn (206 Misc. 969) relied upon by defendant must also be disregarded because the modification on appeal (1 A D 2d 824) constituted a reversal of the point for which defendant cites the case. The Plohn case in the Appellate Division and Rosenstiel v. Rosenstiel (17 A D 2d 106) make clear that neither a spouse who justifiably leaves the marital residence nor one who wrongfully abandons it thereby forfeits his or her title to, or thereby gives to the other spouse any right to retain property not owned by such other spouse. While both cases assume title in a particular party and, therefore, are not strictly in point on the effect of joint use in the determination of title, the dictum in Rosenstiel, in which the wife was the defendant in a replevin action, that (p. 107) “ Of course, the issue may always be tendered of the wife’s original title or one based on a gift made expressly or tacitly, or of an *94 intentional abandonment of the property by the husband, ’ ’ suggests by the absence of any reference to joint ownership through joint use that the Appellate Division, First Department does not consider any such right to exist.
True it is that Tausik v. Tausik (38 Misc 2d 11 and 38 Misc 2d 24) held that no presumption exists in law as to the ownership of property used in common by husband and wife merely because the property was purchased with the funds of one of them and that absent affirmative proof of a different interest, household property obtained for the general use, comfort and benefit of both husband and wife, is deemed to be the property of both of them. True also is it that there is dictum in Avnet v. Avnet (supra) that supports the first Tausik holding and in Brenner v. Legum (supra) that supports the second. Respectfully, the court declines to follow those holdings. The second in presuming from common possession joint ownership is inconsistent with the rule of Whiton v. Snyder (supra) that common possession cases must be decided on their facts, as well as with the statutes, and especially section 3-311 of the General Obligations Law, quoted above. Furthermore, if the first holding is read as excluding from the complex of facts in determining title to personalty jointly used by husband and wife the question whose funds were used to pay for the property, it is in direct conflict with Whiton v. Snyder (supra, p. 307) which speaks of the inference arising from purchase and indirectly in conflict with the statutes referred to above.
The court concludes that there is no rule of law that common possession of marital personalty results in joint ownership, that neither payment of consideration nor joint use gives rise to any presumption as to ownership, but that both are facts to be taken into consideration in determining whether the party upon whom rests the burden of proof (here the plaintiff) has sustained his burden of proving his title and consequent right to possession.
In the present case there are in addition to the inference arising from plaintiff’s payment for the property in question, defendant’s admission in the separation action that the property was not hers, and the recognition implict in defendant’s constant worry about financial security and in the whole course of the marriage that the property was plaintiff’s and not jointly owned. Offsetting considerations are the role that defendant played in the acquisition of the property and the inference arising from the fact that it was jointly used. Weighing all of the circumstances, the court finds on the facts that title to the property is and has always been in plaintiff. Such right as defendant had by reason of the marriage to use the *95 property jointly with plaintiff ceased when she removed from the marital home and gave her no right to remove the property with her. It follows that defendant’s motions at the end of the plaintiff’s case and of the whole case to dismiss for failure to make a prima facie case must be denied and that plaintiff is entitled to judgment as above set forth.