Joseph Modugno, J.
This is a claim for personal injuries allegedly sustained by claimant, Anne Thall, and for damages sustained by her husband, claimant Robert Thall, as a result of the alleged negligence of the State on and about September 6, 1969.
The injuries are alleged to have been inflicted on claimant, Anne Thall, while she was in the parking lot of the South Shore Mall, Bay Shore, Suffolk County, by an escapee of the Northeast Nassau Psychiatric Hospital, a facility of the New York State Department of Mental Hygiene.
Claimant, Anne Thall, testified that on September 6, 1969 she was shopping in the South Shore Mall Shopping Center, and that after leaving one of the stores she returned to her car. As she was about to start her car, she observed a youth at the window. The young man asked her for help and as she turned to lock her door he pulled it open and lunged at her with a knife in his hand. During the struggle that ensued Mrs. Thall was stabbed, but eventually she was able to sound her horn which frightened the youth away. Mrs. Thall was taken to the hospital and treated there for stab wounds of the neck and hands. She further testified that due to shock she was unable to return to her home, which was surrounded by woods and had to move in with her in-laws. When she did return home, she was fearful of the isolation. Mrs. Thall identified Robert Marciano, Jr., as having been her assailant.
*383 Mrs. Thall’s husband testified that he saw his wife immediately after the assault and rode with her to the hospital. He stated that due to her shocked condition, he was denied a normal marital relationship and eventually had to move the family from their home to a new home which was not as rustically situated. He testified that his wife still evidences residual fears caused by the assault in that she is constantly making sure doors are locked.
Robert Marciano, father of the assailant, testified that his son was in a State hospital in 1968 and that at various times he ran away. He stated that at the time of this assault his son had escaped from the Northeast Nassau Psychiatric Hospital.
Detective Mitchell of the Nassau County Police testified that he had arrested Robert Marciano, Jr., in 1969 for an assault on one Janet Olstein on March 25, 1969, and for another assault on one Patricia Groldbaum on March 26, 1969. He further testified that on both occasions the assailant had attacked his female victims as they returned to their cars in shopping center parking lots.
The records of both the Nassau County and Suffolk County Police Department, of the Central Islip State Hospital, and the Northeast Nassau Psychiatric Hospital were introduced into evidence. The State objected to the introduction of these records.
To determine whether or not these records are admissible, it is incumbent upon this court to establish first what specific issues are to be proven by the claimants. Claimants must show that the State was negligent by either an omission or commission of some act which it had a duty to carry out. Furthermore, it would appear that the negligent act would have to be in permitting the assailant to have escaped in the first place. To ascertain whether or not the State should have acted to prevent such an escape it must have had notice that the assailant was prone to escaping. There is no question that those portions of the hospital records, which were kept in the ordinary course of the hospital’s business, are admissible to establish this point.
The defendant, by posttrial memorandum, seeks to have these records excluded and cites Cox v. State of New York (3 N Y 2d 693) in support of that contention. The State in asserting that the records are privileged and therefore inadmissible seeks to put itself in the shoes of its patient to whom the privilege actually extends. (See Scolavino v. State of New York, 187 Misc. 253, mod. 271 App. Div. 618, affd. 297 N. Y. 460.) A *384 statement which constitutes an admission against interest is admissible into evidence to show that such statement was actually made without regard to its veracity. This point was stated in Reed v. McCord (160 N. Y. 330) which was cited numerous times in Cox v. State of New York (supra,). The court in the Reed case, at page 341, stated:
“In a civil action the admissions by a party of any fact material to - the issue are always competent evidence against him, wherever, whenever or to whomsoever made. (Cook v. Barr, 44 N. Y. 156; Whiton v. Snyder, 88 N. Y. 306; Eisenlord v. Clum, 126 N. Y. 559; Hutchins v.Van Vechten, 140 N. Y. 118; Owen v. Cawley, 36 N. Y. 600.)
“ The theory upon which this class of evidence is held to be competent is that it is highly improbable that a party will admit or state anything against himself or against his own interest unless it is true. As the admissions testified to by the stenographer were of facts and circumstances which were material to the issue in this action, they were clearly competent, although not conclusive evidence of the facts admitted.”
So much of the State’s motion as requested exclusion of those portions of the record which deal with diagnosis and prognosis is granted, and it is my determination that they are not relative to the issues at bar.
Upon examining the hospital records of Central Islip State Hospital with regard to an escape we find that on May 7, 1968, and again on August 15, 1968, the assailant escaped from that institution. On examining the Nassau County Police records we note that there are entries, which Detective Mitchell testified were made in the ordinary course of police business, that on March 31,1969 assailant escaped from the Meadowbrook Hospital and that on April 29, 1969 the assailant ran away from the Nassau County Children’s Shelter.
Mere notice that a patient is an eloper is not of itself sufficient to permit a finding of negligence in the case at bar. The State must have owed a duty to the claimant, Mrs. Thall, and I find that the State did, in fact, have a duty to the public at large to protect it from the assailant. In so finding, I utilize the summary of Robert Marciano, Jr.’s record from Central Islip State Hospital which was requested by Northeast Nassau Psychiatric Hospital in the ordinary course of its business. In that summary, Northeast was put on notice that there was something to protect the public from. The last paragraph of that report sets forth the crux of this case: “ but periodically the manipulative aspects of his behavior would emerge when he attempted *385 to elope or avoid returning to the hospital * * * A day prior to his discharge he was on home leave and was arrested after allegedly assaulting with a lmife one woman with intent to rape, similarly threatening another.”
While the above-quoted statements are sufficient evidence of knowledge and notice to Northeast, the record indicates that even prior to admission, the State, by Dr. Olga von Tauber, virtually guaranteed to the Family Court that escape would not be a problem. In response to an inquiry by the Medical Director of the Family Court, wherein it was asked if a closed ward was available, as an open ward was ‘ ‘ not feasible ’ ’ and a State training school would otherwise be necessary, Dr. von Tauber, Director of Northeast, responded: “ For your information our adolescent wards are still closed wards so that you should not have problems with respect to Robert in this regard.”
In order to determine negligence on the part of the defendant it must be shown that the escape was preventable; that the State failed to exercise due care; and that proper precautions were not taken. On perusing the records of the Northeast Nassau Psychiatric Hospital, two entries are found to be relevant on this point. The statement of Paul L. Simeon, the attendant who was on duty and who reported that Robert Marciano, Jr., was missing, clearly states that four days prior to the escape the assailant told other patients about his “ going to escape.” Although this in itself might not be sufficient to find the dereliction of duty necessary for a finding of lack of care, the record also contains a report by the Director of the facility setting forth the method in which Robert escaped. That report was made on September 2, 1969 and could only have been the. result of investigations made by the hospital in the ordinary course of business, as the patient had not as yet been found. The report states as follows: “ It was found that Robert used a home-made window key, went through the window from the ward porch into the In-Service Education classroom. The classroom was being cleaned so the door to the hall was unlocked. He went down to the first floor, to the dining room, through a broken panel, and out the open loading platform.” (Italics added.)
It appears that, for a closed ward, there were a lot of openings. Certainly a broken panel which gives access from a controlled area to one not under control is negligence, leaving aside the open door to the hallway.
Finally, having determined there was negligence in permitting the escape, we must determine if the injury complained of *386 was reasonably to have been foreseen and if, but for the escape, it would not have occurred. There is no question but that Northeast knew that Robert Marciano, Jr., was being retained there because he was mentally ill and more important because he had been discharged from Central Islip State Hospital when he was arrested for having tried to assault sexually two women while he was away from the hospital. This notice to Northeast from both the Family Court and Central Islip should have alerted Northeast that Robert Marciano, Jr., was indeed a dangerous individual. If the hospital had reason to doubt the veracity of the statements made to it, it was under a duty to ascertain the truth. Regardless of whether the statements were true or not, they constituted notice, a red flag, that when this patient was out on the street he was a danger to the public at large and more particularly to women. The proof is in the fact that the assault on Mrs. Thall virtually duplicated those assaults reported to have occurred to the other two women, to wit: a shopping center parking lot in daylight while armed with a knife.
In correlating the foregoing the court directs counsel’s attention to the recent Court of Appeals decision in the case of Dunn v. State of New York (29 N Y 2d 313) wherein the court, in deciding whether or not the State was liable where an inmate escapee stole a car and during the chase which ensued caused the death of claimant’s intestate, set forth the law applicable here. Without quoting at length from that decision the following is of prime importance (pp. 317, 318):
“ Applying these principles to the case before us, the State should have foreseen, in the person of Proper — a man with a history of violence and criminal behavior — a hazard to be guarded against. The agents of the State were under a duty to protect the public and it would appear that this responsibility was recognized when he was placed in a closed ward * * *
“ As our court wrote in Saugerties Bank v. Delaware & Hudson Co. (236 N. Y. 425, 430, supra) ‘ the act of a party sought to be charged is not to be regarded as a proximate cause unless it is in clear sequence with the result and unless it could have been reasonably anticipated that the consequences complained of would result from the alleged wrongful act ’ ’ ’.
Unlike the final determination in the Dunn case (supra) I am of the opinion that the act committed by Robert Marciano, Jr., “was a natural and probable consequence of the State’s negligence ”.
*387 It is my opinion, and I so find, that the State was negligent in permitting Robert Marciano, Jr., to escape and that the escape was the proximate cause of claimant’s injuries. I also find that claimant, Anne Thall, was totally free of contributory negligence. Accordingly I award the claimant, Anne Thall, the sum of $7,500, which includes compensation for the physical injuries she received as a result of the assault, and also for the pain and suffering, fear, nervousness and state of shock suffered by her.
Although there is no competent medical evidence of any causally related psychiatric disability, the court takes notice of the serious psychological impact that such an attack may have on a sensitive young woman, and that the mental pain, anguish and fear caused by such an attack may be periodically revived by similar occurrences to other women which are frequently publicized in our daily communications media. Such an attack may well be the competent producing cause of psychic scars which can persist for an indefinite period of time.
I also find that claimant husband, Robert Thall was damaged in the sum of $290 which includes $40 for medical bills and $250 for loss of services.
The State’s motions to dismiss the above-entitled claim, which motions were made both at the beginning of the trial and during the course of the trial, are denied.