AMZI COMPTON, proponent, appellant,
and
JOHN D. PIERSON, administrator, respondent.

1. The act of 1852, commonly called the "married women's act," did not give to a married woman the *jus disponendi* of her personal property not settled upon her nor held in trust for her, and, by the act of 1864, her will of such property is not valid as against her husband.

2. The latter act is in derogation of the common law, and should be strictly construed.

3. History of legislation on the subject.

On appeal from the decree of the orphans' court of Morris county, refusing probate of a paper writing purporting to be the last will and testament of Melinda Compton, afterwards Melinda Pierson, deceased.

*Mr. Jacob Vanatta* and *Mr. A. W. Bell,* for appellant.

*Mr. H. C. Pitney,* for respondent.

THE ORDINARY.

The will which was propounded for probate in this case, was made by Melinda Compton, in 1869, while she was unmarried. She was married in 1871, to the respondent, and died in 1875. The question discussed, and the only one presented for consideration and determination on this appeal, was whether her marriage was a revocation of the will. After her death, and on the 9th of March, 1875, letters of administration of her estate generally were granted to her husband. In June, 1875, her brother, the executor, propounded the will for probate. By the common law, a married woman might, without the assent of her husband, dispose, by will, of her separate personal estate settled upon or held in trust for her, or the savings of her real estate given to her separate use, whether the instrument under which she took it determined as to the power of disposition or not, and that she might do without the intervention of trustees, for the power was incident to the ownership. 1 *Jarman on Wills* 32.

It is argued by the proponent's counsel that the effect of the act of 1852, commonly known as " the married women's act," was to give to married women the right to dispose of their personal estate generally by will, inasmuch as it declares that the real and personal property of any female, then married, or who might thereafter marry, should not be subject to the disposal, nor be liable for the debts of her husband, and should continue her sole and separate property as if she were a single female. The question whether, by virtue .of the provisions of this act, a married woman could, without her husband's assent, make a will of her personal property not settled upon her, nor held in trust for her, was considered in the case of *Vreeland* v. *Ryno*, 11 *C. E. Gr.* 160. My conclusion there was, that the act of 1852 gave to a married woman no *jus disponendi* of such personal estate, and that after 1864 her will of property not settled to her use, nor held in trust for her, was not valid as against her husband. Nor was the condition of the law in this

Compton *v.* Pierson.

state, as affected by the act of 1852, overlooked in the consideration of that case. By the term " law " in the expression in that opinion, to which the proponent's counsel adverts in that connection, the common law, of course, was meant. The act of 1864, then under consideration, provided that nothing therein contained should be so construed as to authorize any married woman to dispose of, by will, any interest to which her husband then was, or would be, at her death, entitled *by law* in her real or personal property, but such interest should remain in and survive to the husband in the same manner as if such will had not been made. It was in elucidation of the intention of the legislature in using the expression " by law," that the remarks on the subject of the husband's rights at the common law were made. I still retain the same view of the subject. The decree in that case was reversed by the court of errors and appeals, but not on any ground taken, or question discussed or raised, on the hearing in this court. The ground of reversal was, that by the grant of probate of the will, the power of the surrogate was exhausted, and consequently the letters of administration subsequently granted by him to the husband, were absolutely void. The court expressly say that the result at which they have arrived, was reached without reference to the effect of the act of 1864, and leave undecided the question argued by the counsel on both sides in that court and in this, as to the ultimate disposition of the fund.

By the act of 1852, the legislature intended to secure to married women, during coverture, the use of their real and personal property free from the disposal or liability for the debts of their husbands, but did not intend to give power of testamentary disposition. The husband, by virtue of the act, was deprived of the control which he had by the common law. He was prevented from recovering possession of and acquiring title to the personal property of the wife during coverture, but after her death his rights as to the property remained as they were at the common law before

the passage of the act. At common law, as was remarked in *Vreeland* v. *Ryno*, such of her *choses in action* as had not been reduced to possession by him at his death, still remained hers; and on her death, went to her representatives, and not to his. After her death he might, as her administrator, reduce to possession her *choses in action* not reduced to possession in her lifetime, and he would hold them *jure mariti*. The act is in derogation of the common law, and it therefore should be construed strictly. *Kelso* v. *Tabor*, 52 *Barb.* 125. It has been so construed. This sufficiently appears from the subsequent legislation alone.

In 1866, the third section, which provided that it should be lawful for any married female to receive by gift, grant, devise or bequest, and hold to her sole and separate use as if she were a single female, real and personal property, &c., was amended by adding the word " descent." Again, the act of 1864, after giving to an adult married woman power to make a will, provided that nothing therein contained should be so construed as to authorize her to dispose of, by will or testament, any interest to which her husband then was, or at her death would be, entitled by law in her real or personal property, but that such interest should remain in and survive to him in the same manner as if such will had not been made. The passage of that act, twelve years after the act of 1852, is of itself evidence that the legislature did not intend to confer testamentary power by the last mentioned act; for, if they had; if, by force of the provisions of the first and second sections of the act of 1852, testamentary power was conferred; if the enactment that the property of a married woman should continue to be her sole and separate property as if she were a single female, involved by implication the grant of the *jus disponendi*, what need of the act of 1864, with its express grant of the power? And again, if the *jus disponendi* was a necessary or a legitimate consequence of the provisions of the first and second sections of the act of 1852, the husband's interest, by law, in his wife's property, was in 1864, as is argued in this case,

subject to the absolute power of disposition of that property by the wife. She could, by a disposition by will or otherwise, during coverture, have deprived him of all interest in her property. The proviso of the act of 1864, saving the rights which the husband had by law in the wife's property at her death, distinctly recognized the inability of the wife, up to that time, to defeat the rights of her husband at the common law in her property at her death, and its design was to continue such disability. The revision of that act, in which the word "personal" is omitted from the proviso, is further and cogent evidence of construction. The history of similar legislation in New York, from which our own act of 1852 is derived, is of interest. By the act of 1848 it was enacted that the property of any female who might thereafter marry, and which she should own at the time of her marriage, and the rents, &c., thereof, should not be subject to the disposal of her husband nor liable for his debts, and that the property, and the rents, &c., thereof, of any female, then married, should not be subject to the disposal of her husband, but should be her sole and separate property as if she were a single female, except so far as the same might be liable for the debts of her husband theretofore contracted. *Laws (of N. Y.) of* 1848, 307, 308, *c.* 200, § § 1, 2. It was held that that act did not give the power to bequeath or devise. *Wadhams* v. *Am. Home Miss. Soc.,* 12 *N. Y.* 415.

In 1849 an act was passed which provided that any married woman might take, &c., from any person other than her husband, and hold to her separate use and convey and devise real and personal property, and any interest or estate therein, as if she were unmarried, and that the same should not be subject to the disposal of her husband nor be liable for his debts. These acts were in existence when our legislature passed the act of 1852. They were undoubtedly before them as an exemplar. Our act was drawn from them; but the words "convey and devise" were omitted, and the omission is of the greatest significance. The wife obtained no testamentary power by the act of 1852. In

*Beals* v. *Storms,* 11 *C. E. Gr.* 373 (by mistake of the printer the opinion is stated to have been delivered by the vice-chancellor), I expressed my opinion of the effect of the act of 1864. I said, that under that act the will of a married woman is valid without her husband's assent, except as to his legal rights in her property.

The will in question is valid, except as against the husband. It does not appear that the testatrix owned, at her death, any property except such as by the common law would go to her husband *jure mariti.* There is, therefore, no estate to be administered under it. Probate will, therefore, be denied. The decree of the orphans' court will be affirmed. The appellant will be ordered to pay to the respondent his costs (not including counsel fees) in this court.