GRACE R. PHILLIPS, Appellant, *v.* GEORGE M. PHILLIPS,
Respondent.

First Department, April 24, 1956.

*Walter S. Beck* of counsel (*Louis Nizer* with him on the brief;
*Phillips, Nizer, Benjamin & Krim,* attorneys), for appellant.

*Irwin Karp* of counsel (*Harold Epstein* with him on the brief;
*Hays, St. John, Abramson & Heibron,* attorneys), for respond-
ent.

BOTEIN, J. An otherwise routine application for examination during trial poses a question that has not yet been presented foursquare to any appellate court in this State.

Plaintiff wife, having been granted an interlocutory judgment of divorce against defendant husband, moved during trial to examine the husband concerning his income and assets. Thereupon the husband moved to examine the wife as to their standards of living during the marriage, her contributions thereto, and *her* property, assets and current income. Special Term granted the motion of each party for examination of the other. The wife appeals, insisting that her present assets and current income are, as a matter of law, wholly irrelevant to any determination of the amount of alimony to be fixed in the final decree.

It is true that during marriage a husband is obliged to support his family in accordance with his financial ability, and a wife is not legally obligated to use her independent assets to maintain her husband and children (*Young* v. *Valentine,* 177 N. Y. 347, 352). She may choose, however, to contribute towards raising their joint standard of living. "If, with the aid of her funds, they have been living beyond what he alone could afford, then, in event of a separation, he should not be required to support her on that basis wholly out of his own income or property." (VAN VOORHIS, J., in *Judd* v. *Judd,* 1 Misc 2d 965, 966.) There can be no question as to the propriety of an inquiry into the contributions the wife has made towards the standard of living of the parties during their marriage. Query, and more troublesome: In determining the amount of permanent alimony to be paid by a husband, should the court also consider the current income and assets of the wife who obtained the divorce?

At common law it was held that "the very being or legal existence of the woman is suspended during the marriage" (1 Blackstone, Commentaries on the Laws of England 442 [1758]), and that the husband, as the one in control of his wife's property and income, was obligated for her debts and her support. The convention that a divorced husband is responsible for the full and unrelieved support of his wife had its origin back in the days when courts in England could grant no absolute divorce — only a limited divorce, or what we recognize as separation. Since the marriage survived the limited divorce, the husband at fault still retained control of his wife's property; and any support provisions for the wife would be borne out of their joint assets and income. Therefore, there was no practical reason for separately taking cognizance of the wife's property

in fixing allowances for support as an incident to a limited divorce.

This view undoubtedly carried over after the Legislature made statutory provision for the absolute divorce which had not been obtainable at common law. Absolute divorce released the parties from the mutual obligations imposed by marriage, but society demanded that even a divorced wife should be appropriately maintained by her ex-husband so that she would not become a charge on the community. Hence, alimony was created as a statutory substitute for the marital right of support (*Wilson* v. *Hinman*, 182 N. Y. 408, 410).

The position of the wife has changed, however. Her role as a frail, sheltered, ineffectual person — if ever authentic — is as much a thing of the past as her crinoline and whalebone. By statute she has been given exclusive right to hold her own property (Domestic Relations Law, § 50), and her coequal status with her husband has been recognized in law as well as in fact.

" From her old position as an identity merged in him and not separable from him, she has advanced to a position of independence in most respects fully equal with his. Whereas in the period when the law of alimony was largely shaped and fixed she had no property apart from her husband and had no means of securing help if she left him or called him to a legal accounting of his husbandry, today she has her separate property, and ways and opportunities at least as many, if not more, of earning a livelihood outside the home and independently of her spouse." (The Changing Social Setting of Alimony Law, 6 Law and Contemporary Problems, 186, 192–193.)

The number of married women who work in gainful occupations has increased twenty-eight-fold, from 515,260 in 1890 to 14,305,000 in 1954, so that despite continued family responsibilities, almost one third of all married women are now in the labor force (Historical Statistics of the United States 1789–1945, p. 63; 1955 Statistical Abstract of the United States, p. 195). Millions of women own their own property. With the advance in the legal and social status of the married woman have come concomitant responsibilities. " * * * until recent years, a divorced wife had little prospect of being able to work and earn a livelihood, and it was essential to a well-ordered society that she be appropriately maintained by her estranged husband so that she would not become a charge on the community. Times have now changed. The broad, practically unlimited opportunities for women in the business world of today are a matter of common

knowledge. Thus, in an era where the opportunities for self-support by the wife are so abundant, the fact that the marriage has been brought to an end because of the fault of the husband does not necessarily entitle the wife to be forever supported by a former husband who has little, if any, more economic advantages than she has." (*Kahn* v. *Kahn,* 78 So. 2d 367, 368 [Fla.].)

As has been pointed out, alimony is a statutory creation (*Romaine* v. *Chauncey,* 129 N. Y. 566, 571). Such powers as a court may have over divorce and its postoperative problems are conferred upon it by the Legislature. "Prior to the year 1787 the courts of this State had no jurisdiction of the subject of divorce" (*Erkenbrach* v. *Erkenbrach,* 96 N. Y. 456, 458). While the Legislature has in general terms vested the courts with broad discretion to make such directions for support and maintenance " as justice requires " (Civ. Prac. Act, § 1170), it has also laid down more specific standards. It has directed the courts to have due regard to " the circumstances of the *respective parties* " (emphasis supplied) in providing for the support of the plaintiff in orders of judicial separation (Civ. Prac. Act, § 1164), in orders for alimony *pendente lite* (Civ. Prac. Act, § 1169), and in final judgments of divorce dissolving the marriage (Civ. Prac. Act, § 1155). The norms thus enunciated require the courts to consider not only the standard of living the parties enjoyed jointly during marriage, but the financial resources of each, considered separately (*Lake* v. *Lake,* 194 N. Y. 179, 183). There must be a nice but realistic balancing of the wife's needs and her independent means for meeting them with the husband's abilities to pay.

For the most part, this is the standard that has been applied in this State in cases dealing with alimony *pendente lite* (*Berk* v. *Berk,* 191 App. Div. 920; *Seitz* v. *Seitz,* 192 App. Div. 924; *Champouillon* v. *Champouillon,* 277 App. Div. 890). Support obtained through judicial compulsion is not ordered on a unilateral appraisal of the husband's income and assets, but on a showing of need, even during marriage; the amount is fixed " having due regard to the parties' means and circumstances " (Uniform Support of Dependents Law, § 6, subd. [k]; L. 1949, ch. 807, as amd.). There would seem to be no logical reason, under the applicable statutes, why the wife's resources should be considered in the course of litigation during marriage and ignored entirely when the marriage ends.

There does not appear to be any case in which an appellate court in this State has had this precise issue presented in all its facets (cf. *Bittson* v. *Bittson,* 138 N. Y. S. 2d 294, affd. 285 App. Div. 1061; *Benjamin* v. *Benjamin,* 283 App. Div. 455;

*Ammermuller* v. *Ammermuller,* 157 Misc. 75, affd. 249 App. Div. 609; *Boston* v. *Boston,* 205 Misc. 561, 562). However, in *McLaughlin* v. *McLaughlin* (207 Misc. 700) the court denied a husband's motion to examine his wife with respect to her own assets on the ground that the subject of inquiry was immaterial; but the learned Justice acknowledged (*supra,* p. 700) that he knew of no " reported case in which the practice problem which the motion poses has been judicially explored."

The courts of almost every American jurisdiction are in accord in taking the assets of the wife into consideration in fixing the amount of alimony. (See, for example, *Hall* v. *Hall,* 42 Cal. 2d 435; *Kahn* v. *Kahn,* 78 So. 2d 367 [Fla.], *supra*; *Fried* v. *Fried,* 211 Ga. 149; *Holmstedt* v. *Holmstedt,* 383 Ill. 290; *O'Neill* v. *O'Neill,* 18 N. J. Mis. Rep. 82, affd. 127 N. J. Eq. 278; *Coleman* v. *Coleman,* 37 Ohio App. 474; *Bunde* v. *Bunde,* 270 Wis. 226, and *Knebel* v. *Knebel,* 189 S. W. 2d 464 [Mo.].) The text writers are in agreement (2 Nelson on Divorce and Annulment [2d ed.], § 14.45; Schouler Divorce Manual, § 258, subd. [a]; Grossman on New York Law of Domestic Relations, § 806). In some of the States, statutes require expressly that the court consider a wife's separate estate in awarding alimony. Others operate under statutes that provide for the fixation of alimony as justice requires or after taking into consideration the circumstances of the parties.

The rule generally applied in other States is that a husband who has been divorced as a result of his wrongdoing should not be relieved of his marital obligation to support his wife, despite her proven ability to provide for himself. However, the courts usually take the realistic view that the amount of such support should be fixed with an eye to the ex-wife's resources or abilities for self-support.

The abiding interest of the State is in the preservation of the family, and in maintaining it as a self-sufficient, independent unit. Even when the familial entity has been destroyed, however, the State has a continuing interest in allocating the economic burdens fairly, so that members of the former family group, including the husband, are not individually destroyed by crushing economic and psychological pressures. Alimony must therefore be measured largely by the need for support rather than the desire for vengeance, although in weighing the various factors many States avowedly use the fault element as a counterpoise.

Therefore, the financial circumstances of the wife, while not controlling, are relevant as one of the factors that must guide the court's discretion in determining the amount of maintenance

which justice requires. The ultimate determination in each case must depend upon a balancing of several factors — the financial status of the respective parties, their age, health, necessities and obligations, their station in life, the duration and nature of the marriage, and the conduct of the parties (27 C. J. S., Divorce, § 233; Schouler Divorce Manual, § 258, subd. [a]).

Special Term therefore properly permitted the examination of the plaintiff as to her property, income, and assets and correctly refused to limit the examination of the plaintiff to the time when the parties lived together, since one of the criteria is the wife's continuing need for support, and her resources as of the present time are clearly relevant thereto. The order appealed from should be affirmed.

RABIN and FRANK, JJ., concur with BOTEIN, J.; Cox, J., dissents and votes to modify order appealed from so as to limit examination of plaintiff to Items 1 and 2 of the order to show cause dated February 3, 1956, and on these items for the period January 1, 1948, to November, 1950.

Order affirmed.