66 N.J. Super. 90 (1961)
168 A.2d 448
IN THE MATTER OF LYDIA RUTH RINEHART, A MENTAL INCOMPETENT.
THE PLAINFIELD TRUST STATE NATIONAL BANK, GUARDIAN OF LYDIA RUTH RINEHART, A MENTAL INCOMPETENT, PLAINTIFF,
v.
HARRY H. RINEHART, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided February 16, 1961.
*91 Mr. Joseph I. Bedell for plaintiff (Messrs. Lyness & Bedell, attorneys).
Mr. Richard A. Norris for defendant (Messrs. Meredith and Norris, attorneys).
MINTZ, J.S.C.
Plaintiff, The Plainfield Trust State National Bank, guardian of Lydia Ruth Rinehart, a mental incompetent, filed a complaint for a declaratory judgment to determine her interest in certain United States Savings Bonds registered in the names of "Harry H. Rinehart or Mrs. Lydia Ruth Rinehart." The bonds are in a safe deposit box of the bank, maintained under a joint access contract which permits access to the box only by the two of them. The defendant, Harry H. Rinehart, is the husband of the incompetent. Defendant counterclaims for an adjudication that his wife's estate is primarily liable for the cost of her maintenance and care at the New Jersey State Hospital at Marlboro, New Jersey. He contends that he made the payments to the State for her institutional maintenance because her separate estate had not been determined and liquidated, and seeks reimbursement for all amounts so paid by him. He further asserts the present ability of his wife's estate to reimburse him in the amount of $6,756.04, *92 the amount of payment he has made to January 1, 1961 for her maintenance at the State Hospital. He recognizes his liability for her institutional care in the event his wife's estate is exhausted.
This court has already determined that the bonds aggregating $19,750 are equally owned by the incompetent's estate and the defendant husband. The sole remaining issue is, as between the incompetent's estate and her husband, who must bear the primary obligation for the maintenance of the incompetent at the state institution.
It is the duty of the husband to support his wife in a manner commensurate with his means and station in life. This common law primary obligation of support continues during the existence of the marital relationship and is not dependent upon the husband's prosperity or financial vicissitudes, although strained financial circumstances or inability to work may, in a proper case, excuse a present failure to support. The Married Women's Act (R.S. 37:2-1 et seq.) has not changed the common law duty of a husband to provide his wife with adequate support, nor is he relieved ordinarily from this duty because his wife has adequate means of her own or a separate estate. Bonanno v. Bonanno, 4 N.J. 268 (1950); 26 Am. Jur., Husband & Wife, § 339, p. 938. The fact that the wife's separate estate consists in whole or in part of gifts from the husband to her during her competency will not relieve the husband of his basic primary duty of support. In Department of Mental Health, etc., Kentucky v. Mullins, 56 N.J. Super. 449, 462 (App. Div. 1959), affirmed 31 N.J. 598 (1960), the court, in expounding the Kentucky law applicable to that case, stated that it is the husband's "common-law obligation to support his wife, notwithstanding her insanity, in respect to which a third person supplying her with necessaries could recover therefor against him." See also 26 Am. Jur., Husband & Wife, § 356, p. 957.
The defendant does not challenge the common law duty of the husband to support the wife. He urges, however, *93 that N.J.S.A. 30:4-66 and R.S. 30:4-74 impose the primary liability, in this instance, upon the wife's estate. N.J.S.A. 30:4-66 provides:
"Every patient supported in a State charitable institution shall be personally liable for his maintenance and for all necessary expenses incurred by the institution in his behalf and the husband, father and grandfather, mother and grandmother, and the children and grandchildren, severally and respectively, being of sufficient ability, and the wife, if she is in sufficiently comfortable circumstances, of every patient so confined, whose estate is not sufficient for his support, shall support, and maintain the patient in the institution in such manner and to such an amount as the court shall direct. All husbands living separate and apart from their wives so confined, and all parents of illegitimate children so confined shall also be personally liable for such expense."
R.S. 30:4-74 provides:
"A patient's estate or the person chargeable for his support, or the state or county as provided by law, shall be liable for institutional support from the time of the patient's commitment whether he was committed as indigent or nonindigent and irrespective of change of status after commitment."
In re Truslowe, 42 N.J. Super. 23 (Juv. & Dom. Rel. Ct. 1956), is authority for the proposition that, as between the father of an incompetent daughter without funds of her own and the county, the primary obligation for the support of the daughter in a state mental institution under the cited statutes is with the father. It does not deal with the precise issue here involved. Board of Chosen Freeholders of Camden County v. Ritson, 68 N.J.L. 666 (E. & A. 1903), is likewise distinguishable. It was there held that it is within the power of the Legislature to make the estate of an insane person liable for her maintenance at a state mental institution. The statute there involved provided in effect that every insane person in any county insane asylum shall be personally liable for his maintenance therein. The court stated, at page 668:
"* * * the statute simply gives to the board of chosen freeholders, when they furnish the maintenance at public expense, the right to recoup, for the public, the expense thus incurred."
*94 From this it does not follow that the Legislature diminished the primary common law liability of the husband.
The issue here is not whether the county or the State in the first instance has the right to reimbursement from the wife's separate estate for the cost of her maintenance at the institution, but whether the husband still bears the common law primary responsibility to support his wife who is committed to a state mental institution. In Holden v. Public Service Electric & Gas Co., 127 N.J.L. 405 (Sup. Ct. 1941), the decedent's widow for years had been committed to a state institution for the insane at public expense under an order of the court placing the entire burden of support upon the county, with no provision for reimbursement by the husband. This order seems to have been predicated upon the husband's asserted lack of means to defray maintenance costs. The husband suffered a fatal injury in the course of his employment, and the question arose whether the widow was a dependent within the purview of the Compensation Act. It appeared in the course of the trial that the decedent had been regularly employed for some years prior to his death. The court concluded that the deceased was not relieved of the obligation of maintenance by the order adverted to, which did not contain any provision for reimbursement by the deceased to the county. Notwithstanding this omission, the court stated at page 408, referring to the decedent:
"* * * The latter's liability for such institutional care and maintenance of his wife remained unimpaired. R.S. 1937, 30:4-66; 30:4-70; 30:4-71; 30:4-74. Vide Warren County v. Harden, 95 N.J.L. 122. The husband's obligation in such circumstances is still primary; the county's, secondary.
Thus it is that, at the time of the employee's death, his wife was `wholly dependent' upon him within the meaning of the statute."
The issue here raised was considered in the case of In re Hannon, 52 Pa. Dist. & Co. R. 160 (Com. Pl. 1944), where the Pennsylvania court held that notwithstanding the primary *95 liability of an incompetent's estate to the Commonwealth imposed by statute to facilitate the collection of claims for maintaining inmates of state institutions, and the election of the Commonwealth to proceed against an insane wife's separate estate, as between husband and wife the primary liability to support arising out of the marriage relation remains upon the husband. See also In re Fox' Will, 275 N.Y. 604, 11 N.E.2d 777 (Ct. App. 1937). In the case of In re Guardianship of Thrasher, 105 Cal. App.2d 768, 234 P.2d 230 (D. Ct. App. 1951), the court was called upon to construe several statutes pertaining to the maintenance of an incompetent wife in a state hospital. The court there cited the general rule that the primary duty of support of the wife and family rests upon the husband who is not relieved of that duty merely because the wife may have a separate estate of her own available for her support, and in the course of its opinion stated, at page 233 of 234 P.2d:
"In Meyer's Estate [Myr. Prob., Cal., 178] the husband applied for an order on the guardian of the wife, who was insane, to refund out of her estate the amount which he had expended for her support, since she had a large estate, although he was also wealthy. The court, in denying the application, said: `It is the duty of the husband to maintain the wife, whether she be sane or insane; and while he has the ability so to do, resort cannot be had to her estate.'

* * * * * * * *
We believe that the reasonable and proper construction of all of the applicable sections is that the husband of a wife who has been committed to a mental institution is primarily liable for her maintenance there to the extent of his financial ability to pay for it; that if she has estate over which a guardian is appointed, he may not draw upon such estate for her maintenance so long as he has the financial ability to pay for same; that it is not only the right but it is the duty of the Department of Mental Hygiene to protect and preserve the estate of a person legally committed to its care; that the Welfare and Institutions Code provides the means and method by which the state may receive payment from the insane person's estate, but this in no way releases the husband from his primary obligation, nor does it prevent the department from making proper objections in the guardianship proceeding to the shifting of said obligation to the guardianship estate."
*96 In Aurora Casket Co. v. Ropers, 117 Ind. App. 684, 75 N.E.2d 680 (App. Ct. 1947), the question presented was whether the commitment of a dependent wife to the state hospital for the insane modified her husband's obligation to support her, so that under the workmen's compensation act she was only a partial dependent. The deceased husband had been required upon the wife's commitment to the state hospital to pay the statutory maximum of $5 per week. The court there said, at pages 681-682 of 75 N.E.2d:
"One of the most basic duties and fundamental obligations of mankind recognized by the law is a man's obligation to support his wife. This obligation arises out of the marital relationship. The failure to meet such obligation is universally made punishable as a crime. Because of the high recognition accorded this fundamental duty in the common law and by statute, courts are bound to strictly construe statutes which purport to relieve a husband from such duty. * * *
The statutes relied upon by appellant as limiting a husband's liability to support a wife who is confined in a state hospital for the insane, §§ 22-401, 22-1201, Burns' Ind. Ann. Stat., supra, merely provide a means of reimbursement to the state out of the estate of a person confined at the state hospital for the insane. This statute did not expressly provide that such provision should relieve the husband for liability of support under such circumstances, nor can we read such intention of the legislature into such statute by implication. * * *"
In Aurora, supra, the court referred to the minority rule in some jurisdictions that the husband is under no duty or liability to support his wife while she is confined in a public institution for the insane. See also Warren v. Boney, 52 So 2d 896 (Fla. Sup. Ct. 1951). This court is bound to construe strictly a statute which purports to derogate from the husband's common law obligation to support his wife. Aurora Casket Co. v. Ropers, supra; cf. Compton v. Pierson, 28 N.J. Eq. 229 (Prerog. 1877). N.J.S.A. 30:4-66 and R.S. 30:4-74 make the wife and her estate liable for her institutional support. The cited statutes make the wife's estate a source of reimbursement to the State for her maintenance at the institution. They do not expressly or impliedly *97 relieve the husband of his primary liability under the common law to support his mentally ill wife.
The statutory provisions that the defendant asserts alter his duty to support his institutionalized wife must be looked at in context. They are part of the chapter dealing with the management, control and operation of state institutions, more particularly subdivision "D" concerning commitment and maintenance of patients. As a reading of subdivision "D" clearly shows, the Legislature was concerned with the fair allocation of the expenses of maintenance between the State and county on the one hand, and the patient and his family on the other. A reading of the provisions of subdivision "D," e.g., N.J.S.A. 30:4-60, R.S. 30:4-64, N.J.S.A. 30:4-70, N.J.S.A. 30:4-80.1, indicates the Legislature's intent was that public money not be used to support a patient when he or his relatives could bear the burden. The Legislature intended to facilitate the collection of maintenance expenses from the institutionalized person or his family. For this purpose it was logical to put "the husband, father and grandfather, mother and grandmother, and the children and grandchildren" in one category. But there appears to be no reason to suppose that when it created a class for the purpose of protecting the public treasury, the Legislature intended to wipe out established legal obligations within that class. The legislative intent to protect the public funds compels a contrary result. The husband's primary common law support obligation must be maintained so that if he should subsequently suffer a financial misfortune or die before his wife, her separate estate will be available for her maintenance. To achieve the legislative purpose, Mrs. Rinehart's estate must be preserved for the day when it may be needed. Cf. In re Hannon, supra.
The defendant is not entitled to reimbursement from the wife's estate for moneys paid to the state for her maintenance at the state institution. An appropriate judgment will be submitted, consented to as to form or to be settled on notice.