Matthew M. Lett, J.
These three actions were directed, by separate orders at Special Term, to be tried together. Affirmance by the Appellate Division of the second order resulted in the third action being joined for trial before me after the commencement of the trial of the other suits. It was stipulated that the proof presented would, where relevant, apply to all three cases.
The plaintiff in these actions is the husband. His wife is the principal defendant. By such actions, the husband seeks (1) a separation on the grounds of abandonment and cruel and inhuman treatment; (2) a declaratory judgment determining that, as against his wife, he is the sole owner and entitled to possession of the furnishings located in the co-operative apartment owned by him and lived in as the matrimonial home of the parties; and (3) damages for the alleged wrongful withholding of possession and the use and occupancy of the co-operative apartment by the wife.
In his action for damages, the plaintiff has joined as a party defendant a surety company on two bonds which the defendant wife was required to post in connection with the litigation between the parties involving possession of the apartment. The defendants answered separately, denying material allegations and asserting similar affirmative defenses. These allege, in substance, that the defendant wife was entitled to remain'in the co-operative apartment without any obligation therefor to the plaintiff. In addition thereto, the defendant wife’s answer in this action contains three counterclaims. In the first, .she asserts ownership of the furnishings and furniture, with minor exceptions. In the second, she seeks damages for the alleged wrongful retention by the plaintiff husband during the pendency of this litigation of such furnishings and furniture. In her third counterclaim, the defendant wife seeks to recover from the plaintiff husband the sum of $15,000 allegedly expended by her for necessaries following the plaintiff’s departure from their marital abode.
In her answer to the separation action, the defendant wife has set forth two counterclaims for separation. They are not before me for disposition, having heretofore, on motion of the plaintiff, been stricken. The wife’s defenses, however, of abandonment and of cruel and inhuman treatment by the husband, also pleaded, remained for consideration by way of trial.
*13 In the action for a declaratory judgment, the wife’s answer pleads five affirmative defenses. These allege, in substance: (1) that the court should decline jurisdiction of the action because of the pending matrimonial suit; (2) that the plaintiff has an adequate remedy at law; (3) that the defendant is solvent and able to respond to the plaintiff in damages; (4) that the defendant asserts no interest in some of the household articles — which is also pleaded by way of a partial defense; and (5) that the plaintiff husband has abandoned the defendant wife.
The complaints, denials and defenses and remaining counterclaims culminated in a vigorously contested trial — which lasted many days — of sharply disputed facts and inferences and which resulted in numerous proposed findings of facts and conclusion^ of law, all of which have been passed upon by me. In this opinion, therefore, I have touched only upon several of the highlights in point of fact and of law.
The record establishes that the plaintiff, now some 70 years old and the defendant, approximately 63 years of age, were married in the State of Connecticut on July 21, 1954. Each of the parties had enjoyed the pleasures and endured the vicissitudes of prior marriages. The wife was a widow when she married the plaintiff. He had been married twice prior to his present venture, and had been divorced on each occasion. The parties have no issue of the present marriage, but each has adult children with prior spouses. On the economic plane, the husband might properly be called wealthy, the wife has independent means.
For the first four years of their marriage the parties resided in an apartment at 301 East 21st Street, New York City. The building in which this apartment was located is owned by the plaintiff. In the latter part of 1958, he purchased a co-operative apartment at 110 East 57th Street, New York City, and moved into it with the defendant in or about November 1958. Shortly thereafter, the parties began to suffer marital difficulties.
The plaintiff was not an easy man to live with. His was a dominating personality. Some of his conduct, as proved upon this trial, might certainly be characterized as inconsiderate — indeed, cantankerous — and not in consonance with the tender affection a wife is entitled to expect from a truly loving husband. On the other hand, an attachment by the husband to his married daughter — to which the wife objected, ostensibly for the benefit of the husband’s psychologic and psychiatric well-being, but actually (or, at the least, ambivalently), because of the wife’s guarded feeling of jealousy — did not receive the understanding on her part that the circumstances warranted. *14 And the husband’s sporadic fits of temper, occasioned in some measure by an already disturbed emotional and mental state on his part — a condition adequately disclosed to the wife prior to the marriage — did not receive the understanding or forgiveness which a woman is bound to give to one whom she takes as her mate for better or for worse. The parties, individually and jointly, soon came to recognize that they could not make a go of their marriage.
In any event, husband and wife decided — separately and together— to live apart, and, from then on, each began and continued to jockey for what was deemed, by him and her respectively, as the best legal position. In this contest, the husband had the benefit both of experience and of counsel.
On January 4,1959, while the parties still jointly occupied the co-operative apartment, the defendant wife wrote the plaintiff a note which reads as follows:
110 East 57th Street January 4th, 1959
Dear Adolph —
Since I have decided to live apart from you, 1 appreciate your allowing me to remain in this apartment until I find a permanent place to which to move. I shall try to accomplish this as quickly as possible and, in any case, I shall not stay any longer than two months.
It was my suggestion that you live at your 21st St. apartment during this period and therefore I am enclosing my check for the rent for January for the Dorchester apartment.
Check enclosed Sincerely,
Helen
This writing is used by the plaintiff in support of the contention that it was the decision of the defendant wife, and hers alone, to leave him and to live thereafter apart from him, and, in consequence, it is urged by the husband that the proof is convincing that his wife abandoned him. I do not agree. The language of the note and the circumstances surrounding its writing have made it plain to me that, at least in respect of the marital relationship,* the plaintiff may have deemed himself ¡successful in the legal maneuver of procuring the writing that he did. But it clearly appears from the credible proof adduced *15 upon the trial that the definitive decision to separate was a mutual one, and that the wife took no unilateral action in that regard to which the husband truly objected.
On the fifth day after the husband received the written request of January 4, 1959, that he leave the 57th Street dwelling, he did so. But, contrary to the wife’s contention, I do not conclude that he thereby abandoned her. The separation commenced and was continued entirely by mutual consent. This is evidenced by the fact that immediately after the writing of the note, the implementation by the wife of the agreed-upon plans for a separation was carried on apace. Among the indicia of willing consent on her part were the purchase by her of blankets and linens for her husband’s use at the 21st Street apartment, the removal by her of her clothing and other personal possessions from the latter place, and the delivery to him of her personal check in payment of a month’s carrying charges on the co-operative apartment which she was to occupy alone.
It is true that, thereafter, the husband made a number of requests upon his wife for the resumption of their marital relationship, and that these proffers were continuously spurned by her. The husband now contends that thereby he was abandoned. No doubt it is that, were the proposals made in good faith and were the wife’s refusals to accept them entirely unwarranted, an abandonment would result on her part sufficient to entitle him to a judicial decree of separation (Aghnides v. Aghnides, 308 N. Y. 530, 532; Solomon v. Solomon, 290 N. Y. 337, 340-341; Grossman, New York Law of Domestic Relations §§ 489, 492).
But, throughout, the plaintiff has completely ignored his wife’s objections to living in the same building in which his daughter resided. Whether or not, as urged by the defendant, it was ‘1 psychologically bad ’ ’ for the plaintiff to live in close proximity to his daughter is not to be determined as a matter of isolated medical consequence (although, on that score, I am inclined to agree with the defendant). In the context of the whole picture of the relationship between the parties, the crux of this issue is that the husband knew well enough that it was emotionally bad for the defendant and that such a condition would certainly negative the prospect of actual reconciliation.
On this point, there is no controversy 'as to the external facts. Indeed, on the one hand, the wife admitted in her testimony that the plaintiff had asked for a reconciliation; and, on the other, there is no dispute by him that such return would require her to live with him in the East 21st Street apartment. In the circumstances, it is my view, therefore, that the husband’s requests for a reconciliation were not made in good faith.
*16 The desire on the part of the plaintiff to be near his daughter— certainly if, and even if not, a purely emotionally selfish feeling on his part — must give way to the responsibilities and relationships he assumed when he married the defendant. “ When a man marries and founds a new family, he assumes new duties and obligations; and, when these conflict with his former ties, they must be held paramount ” (Brewer v. Brewer, 79 Neb. 726, 729). It may be that the plaintiff in this case, “ has shown a strong sense of filial duty. This is commendable, but it must not conflict with the conjugal duty he owes to his wife. The family is the unit of the social organism, and, while the institution of new families to some extent involves the distintegration of the older household, it is absolutely necessary to continued social existence ” (Brewer v. Brewer, 79 Neb. 726, 729, supra).
The plaintiff cannot, as he has sought to do, rely upon the naked power of a husband to select the place of marital abode. The plaintiff’s views as to his rights are archaic and outmoded. “ The concept of the absolute rights of the husband was the prevailing legal and social order of by-gone days. However, the assault on the citadel of the husband’s supremacy is proceeding in these days apace, so that today the wife is no longer in complete .subjugation to the dictates of her husband ” (Eftimou v. Eftimou, 204 N. Y. S. 2d 785, 790).
The husband’s “ right to change his own domicile, if his duties to his wife are left out of consideration, is absolute. But in relation to the rights and obligations of the parties in their marital relations it is not absolute. It must be exercised with some respect to the welfare of the wife. Cases occur where the choice of a new domicile is so plainly unreasonable and improper, in reference to her health and welfare, that the selection of it, and an attempted enforcement of his general marital right to have her share it with him, would be such extreme cruelty as would justify her to decline to accompany him or to follow him to a new place of abode ” (Matter of Wandmayer, 178 Misc. 464,468).
In short, as the law has developed in this area, the male spouse may not proceed in unilateral, mandatory or dictatorial fashion. Hi a right of determination is no longer an arbitrary one. He ‘1 must exercise his rights in a reasonable manner with due regard for his wife’s health, welfare, comfort and peace of mind” (Eftimou v. Eftimou, 204 N. Y. S. 2d 785, 790, supra). And a ‘ ‘ wife may refuse to go to the domicile selected by her husband if it is near or with his relatives, with whom life would *17 be neither happy nor peaceful ” (Sealy, Law of Persons and Domestic Relations, 2d ed., § 168, p. 152).
On the other hand, I do not give credence to the defendant’s testimony that, when she withdrew her suit for separation against the plaintiff — which, during the trial thereof was permitted by my learned colleague to be discontinued, but with prejudice — she did so because she wanted to become reconciled with her husband. The evidence convinces me that she knew quite well by that time that the plaintiff would not resume their marital relationship if that meant giving up the consummation of his insistent desire that they live at the 21st 'Street address so that he could always be near his married daughter — a condition to which the defendant was unalterably opposed. Nor do I believe that, indigenous to her discontinuance, there was a gesture of genuine magnanimity, indicating an unwillingness publicly to disclose her complaints about her husband’s conduct — which act of abnegation was intended to result in his willingness to resume their lives together.
In the constant seesaw between these two, I must, as best I can, pierce the veil of declarations and protestations and seek to ascertain the subtle motivations. All in all, I am persuaded by the evidence that the offers, actual or implied, by one spouse or the other were not imbued with the true spirit of marital passion but rather with the litigious spirit for advantageous position. The upshot of the matter is that it is my determination, on the facts, that neither of the parties abandoned the other and, on the law, that the plaintiff’s cause of action for separation on that ground is dismissed on the merits and the defendant’s defense on that ground is stricken on the merits.
The plaintiff’s second cause of action for a separation (on the ground of cruel and inhuman treatment) is based on the charge that the defendant’s prior action against him for a separation, which was later discontinued by her with prejudice, had been maliciously instituted. Under the law as it exists today, it is not necessary to prove actual physical violence, in order to establish that a party has been guilty of conduct rendering it unsafe or improper to cohabit with a spouse. Conduct may produce such mental pain as to be more cruel and inhuman than if physical pain had been inflicted (see Avdoyan v. Avdoyan, 265 App. Div. 763; Grossman, New York Law of Domestic Relations, supra, §§ 481, 483). However, for mental cruelty to warrant a judicial separation such as is sought here by the plaintiff, it must appear that the defendant’s conduct was of that character as to impair the plaintiff’s health. The misery arising out of domestic quarrels, in and of itself, does not justify *18 a judicial termination of the legal rights and duties of either of the parties (Solomon v. Solomon, 290 N. Y. 337, supra; Pearson v. Pearson, 230 N. Y. 141, 148; Traylor v. Traylor, 3 A D 2d 727).
In the case at bar, there was no proof that the prior suit and its discontinuance adversely affected the plaintiff physically, mentally or emotionally. As a matter of fact, the plaintiff admitted as much in his own testimony. Regardless, therefore, of the veracity or falsity of the defendant’s allegations in her discontinued matrimonial action, or her motives in discontinuing it — and I do not find on the evidence that all of her charges were untrue or that she maliciously brought the suit — no valid ground exists for a decree of separation based on cruel and inhuman treatment. Accordingly, the plaintiff’s second cause of action is dismissed on the merits.
I come now to the action for a declaratory judgment as to the ownership of the personalty in the co-operative apartment. The pendency of the matrimonial action and its disposition by me herein after trial, is not, as contended by the defendant, a ground for the court to decline jurisdiction of this controversy. It clearly appeared at the very outset of the trial of this action that the question of ownership of the furnishings and furniture would not be determined in the matrimonial action. Moreover, there has been (as I have noted earlier) a joint trial of the actions, and, therefore, this issue, originally raised by the defendant as a major contention, has now paled into insignificance— at least, so it seems to me.
Regardless of that fact, and contrary to the defendant’s contention, while the court may refuse to exercise jurisdiction on request for a declaration because an adequate remedy is already provided by another form of action, it is not bound so to do (Woollard v. Schaffer Stores Co., 272 N. Y. 304, 311-312). I recognize, of course, that there is a clear distinction between the jurisdiction of the court to grant declaratory relief (Civ. Prac. Act, § 473) and the exercise of judicial discretion pursuant to such jurisdiction (Rules Civ. Prac., rule 212). Since the general purpose of obtaining a declaratory judgment is to remove uncertainty from legal relations and to clarify, quiet and stabilize them by the removal of legal clouds (James v. Alderton Dock Yards, 256 N. Y. 298, 305; Russell v. Marboro Books, 18 Misc 2d 166, 191 and cases cited therein), the serious dispute between the parties as to title to the personalty involved is a proper matter for determination in an action of this type. I do not believe, in the light of the facts presented in this case and of the present posture of the several litigations between *19 the parties, that they should be relegated to further lawsuits — such as conversion or replevin — to dispose of the controversy as to these chattels. Inasmuch as this court has, in these trials, been made fully cognizant of the issues between the parties and of their respective contentions, I deem it advisable in the interest of justice and to avoid unnecessary further litigation between them, to determine the issues raised by the pleadings in the declaratory judgment action.
Nothing in the record warrants the conclusion, as claimed by the defendant, that plaintiff made a gift to her of the property. The necessary elements usually supporting .such claim were not established by the defendant, and the special circumstances here do not support her. Her “possession” of these articles by ordinary use in a common dwelling with the plaintiff creates no presumption of a gift (Tyrrell v. York, 57 Hun 292). And the license later granted to the defendant by the plaintiff to remain in exclusive possession of the co-operative apartment for a maximum period of two months, as evidenced by the note of January 4, 1959, hereinbefore set forth, is not sufficient to take this matter out of the usual husband-wife situation in respect of the ownership and use of household property. What that situation is under existing law is entitled to some consideration.
As to the apartment itself, the question of ownership and right to possession has already been resolved in prior litigation between the parties (Tausik v. Tausik, 9 N Y 2d 664). As a result of the final order obtained by the plaintiff against the defendant in the summary eviction proceeding heretofore referred to, the former’s paramount title to the co-operative apartment must be deemed res judicata here (see Bannon v. Bannon, 270 N. Y. 484, 489). But title to the personal property here involved is not ipso facto determined by the ownership of the premises. While the plaintiff’s testimony indicates that he purchased the co-operative apartment and its contents as a ‘ ‘ package deal ’ ’, it does not follow, as urged by him, that as a matter of law, he is the sole owner of the household furniture and furnishings. No presumption in law exists as to the ownership of household property used in common by husband and wife, merely because such property may have been purchased solely with the funds of one of them (Plohn v. Plohn, 206 Misc. 969, mod. 1 AD 2d 824).
Although New York does not subscribe to the principle of “community property” {as do Arizona, California, Nevada, Texas and some other States), it is now clear, even here, that, absent affirmative proof of a different intent, household property obtained for the general use, comfort and benefit of both husband *20 and wife, is deemed to be the property of both of them. As the court stated in Avnet v. Avnet (204 Misc. 760, 763):
‘‘ Lawyers and laymen alike have been heard to say at one time or another, that household furniture and effects are presumed to be the property of the husband, the property of the wife, and then again the property of both jointly, this without regard to who purchased it or who brought it into the marital domicile.
“ One thing is clear and that is that no presumption in law exists as to the ownership of such items used in common by husband and wife where they were purchased with the funds of the husband or the wife or with the funds of both of them. In each case title depends on the facts.”
And in Plohn v. Plohn (206 Misc. 969, mod. on other grounds 1 A D 2d 824, supra) the court made the following observations at pages 974-975: “As to the household furniture and furnishings claimed by plaintiff in her fourth cause of action, consisting of the furniture and furnishings of the marital home left there by plaintiff when she left, and now being used by defendant, who continues to .reside in the apartment, I am of the opinion that the correct rule of law is that where a husband brings his own property to the marital home as furniture and furnishings thereof, and also where he buys such furniture and furnishings and places them in the home, and also where a wife brings her own property to the marital home as furniture and furnishings thereof, and also where she buys such furniture and furnishings and places them in the home, and also where relatives or friends give wedding presents of household furniture and furnishings, or of money with which such furniture and furnishings are purchased, the only inference which can be drawn, in the absence of affirmative evidence of a different intent, is that all the furniture and furnishings so supplied to the home are so supplied for the joint use, comfort and benefit of both husband and wife, and that neither spouse thereby acquires any title or ownership which entitled either to take the articles from the home or exclude the other spouse from joint use and benefit thereof.” No credible evidence has been presented in the instant case that the parties had any specific intent as to the ownership of such household property, except as to some works of art and an unusual ‘1 hi-fi ’ ’ set which, as I view the evidence, were not normal household effects and were to continue to remain the property of the plaintiff. Except for such specific items, I find that the defendant, by virtue of her status as the plaintiff’s wife, is entitled to share equally with him in the use and enjoyment of the household furniture and furnishings. If the parties are unable to arrive at a satisfactory and amicable division of such *21 properties, the judgment to be submitted herein may provide for their sale and an equal division between the parties of the proceeds thereof.
The husband’s third suit against the wife is for damages for her alleged wrongful withholding from him of possession of the co-operative apartment. The plaintiff’s claim here is for the use and occupancy of the apartment from February 4, 1959 (the defendant having paid the rent for the first month of the separation) to February 13, 1961, when the wife was evicted therefrom pursuant to the plaintiff’s successful prosecution through the Court of Appeals of a proceeding summarily to dispossess her (see Tausik v. Tausik, 9 N Y 2d 664, supra). It is in the instant action for damages in which the surety company was also made a party defendant.
In presenting this claim for damages the plaintiff asserts that, with the exception of the first month of the period involved, the rental value of the apartment was $1,000 a month. In my view the claim is excessive, and, moreover, it conclusively appears from the evidence that the plaintiff was not damaged in any way by the defendant wife’s continued occupancy of the premises. It appears that, by virtue of the tax deductible nature of the maintenance charges paid by the plaintiff on the co-operative apartment, he has received tax benefits in excess of these expenses. Moreover, the credible evidence shows that the plaintiff was advised by his attorney that the defendant wife was willing to show the apartment to prospective customers and to surrender possession thereof if a bona fide sale took place; such event never occurred. Despite his legal obligation to minimize his alleged damages (Norske Ameriekalinje Actiesselskabet v. Sun Printing and Pub. Assn., 226 N. Y. 1, 7), the plaintiff made no effort either to sell or to rent the cooperative apartment until after February 20,1961, at which time he refused an opportunity to lease it at a monthly rental of $750. During the two years she remained in possession thereof, the plaintiff continued to reside in the East 21st Street apartment, which he had always maintained in a building wholly owned by him.
Accordingly, I hold that the plaintiff has failed to prove the alleged damages set forth in either the first or second causes of action here involved. Both causes of action, therefore, are dismissed on the merits.
The individual defendant, as I have said, has interposed three counterclaims in the action instituted against her for damages for the alleged wrongful withholding by her from her husband of possession and use of the co-operative apartment. In the first counterclaim, she asserts sole ownership of the chattels *22 in the apartment; and in the second counterclaim she demands damages for their alleged wrongful retention by the plaintiff during the pendency of the litigation. These claims have, in effect, been disposed of by my determination in the separation and declaratory judgment actions. The fact is, as I have found it to be, that the wife and the husband separated by mutual consent, and as I held that the wife’s title to the domiciliary furniture is equal to that of the husband, so is that holding applicable in reverse. The title of neither is paramount to the other. Accordingly, these two counterclaims are without merit.
In her third counterclaim, the defendant wife asserts that, between January 9,1959 (when her husband allegedly abandoned her) and February 13, 1961 (the date of the commencement of this action) she expended $15,000 out of her separate property for necessaries for her own support and maintenance. This sum does not include any amount for rent or the value of the use and occupancy by her of any premises for residence purposes, since she admittedly resided in the co-operative apartment throughout this period and the maintenance charges therefor were paid by the plaintiff husband. As to household expenses, maid’s wages, telephone, gas and electricity charges, clothing and wearing apparel purchases, restaurant bills, routine gratuities to the residential building staff, cost of laundry, stationery, newspapers and the like, medical expense, and even beauty parlor and hairdressing disbursements, I find all of these to have been expended as claimed, reasonable in amount and to be necessaries in the light of the husband’s economic status, his financial income and the mode of living of the parties. And, while I do not find that the husband had abandoned the wife, and since I do find that their living apart was by mutual consent, I hold that he is liable for such necessaries.
‘ ‘ The obligation of the husband to support his wife * * * arises from the marriage relation and the wife may not release the husband from the obligation or diminish it; but husband and wife may agree upon the scale on which the home will be maintained, or if they live apart, they may agree on a reasonable amount which the husband should pay for the support of his wife * * * ” (Goldman v. Goldman, 282 N. Y. 296, 299-300). Since the parties had not agreed as to the amount of support, the husband is required to pay the wife for necessaries expended by her for her maintenance in accordance with the style in which they had lived together and consistent with the capacity of the husband to meet the obligation to support.
The record discloses that, when the defendant wife was the plaintiff in her own separation action, she made a motion for *23 support pendente lite. That application was denied, and, as I have noted hereinbefore, upon the trial of that action she discontinued it with prejudice. In the present suit, in which the wife is a defendant, she did not apply for such relief pending the trial. The plaintiff argues that, therefore, the defendant is not entitled to recover her expenditures for necessaries by way of an independent suit. I disagree.
That a husband is liable for necessaries furnished to his wife is a principle so well established in our law that no cited authority is required to support it; and, under ordinary circumstances, a husband is under the same legal duty to support even a well-to-do wife whose personal assets approximate or even exceed his own (Woronzoff-Daschkoff v. Woronzoff-Daschkoff, 303 N. Y. 506, 512). Since I have found on the facts that, in this case, the wife did not give cause to the husband to relieve bim of his obligations, and that the separation between the parties was mutually agreed upon, the husband’s duty to support his wife still continued. ‘ ‘ [A] husband and wife cannot contract * * * to relieve the husband from his liability to support his wife ” (Domestic Relations Law, § 51).
Another type of expenditure sought to be recovered by the wife in her counterclaim now being considered is for the charges of counsel for the representation of the wife in the several litigations with her husband, and the expenses incurred by her therein. The record on this point shows that no motion for counsel fees and disbursements was made by the wife when she was the protagonist in the first separation suit, nor was an application made by her when she was placed on the defensive by the institution of the present separation action involved in this joint trial.
The plaintiff herein relies upon Handelman v. Peabody (285 App. Div. 689) to defeat recovery by the defendant. As I read that case the court simply expressed disapproval of the practice of counsel’s proceeding by way of a subsequent separate suit for the wife’s legal services, and stated that the more desirable course to follow to obtain counsel fees is for such an application to be made in the pending matrimonial action in connection with the application for temporary alimony. But the court did not hold that the plenary action would not lie. In this action — by way of counterclaim — to recover for necessaries, the defendant wife is not seeking to enforce any rights conferred upon her by the matrimonial statute in the Civil Practice Act (§ 1169), but, rather, she seeks these moneys upon a promise to pay which the law implies from the legal relationship of husband and wife (De Brauwere v. De Brauwere, 203 N. Y. 460; Manufacturers *24 Trust Co. v. Gray, 278 N. Y. 380, 386). Since I have dismissed on the merits the husband’s action for separation, I hold that the wife is entitled to recover on her counterclaim in this action for damages the reasonable value of the expense for the legal services necessarily incurred by her in the defense of that separation action.
However, the counsel fees and legal disbursements involved in the wife’s prosecution of the separation action against her husband and of her defense of the summary proceeding instituted by him against her are, it seems to me, in a different category. I do not believe that she brought her suit or defended his in bad faith, and I hold on the facts that the sums involved were reasonable in amount. But these expenses were incurred in connection with unsuccessful efforts on her part in respect of litigation against and by her husband, the very person from whom she now seeks reimbursement for those expenses. I have found no precedent in point — the situation is undoubtedly an unusual one — but it would seem to me quite incongruous to hold that a litigant who has lost her case on the merits may recover the expenses of carrying it on because, forsooth, the other and successful party happened to be her husband. In the case at bar, the wife voluntarily discontinued her separation action with prejudice, and was defeated on the merits on the issue of ownership of the apartment. In the circumstances, I hold that these expenses are not recoverable by her from the plaintiff.
Proposed findings of fact and conclusions of law in each of the three actions (totaling over 400) have been passed upon and filed. Submit decisions and judgments accordingly within 20 days on 5 days ’ notice.

 The letter has been held to have created a license arrangement on the basis of which the husband, as owner of the co-operative apartment, might, after cancellation, evict the wife (Tausik V. Tausik, 9 N Y 2d 664). But it has also been held in this case that it did not affect the responsibilities of the parties in respect of their marriage (Tausik v. Tausik, 11 A D 2d 144, affd. 9 N Y 2d 664). That holding is the law of the case, so far as I am concerned (Sorin v. Shahmoon Industries, 30 Misc 2d 429, 435 and cases cited therein).