540 P.2d 718

**Byron IVANCOVICH, Appellant,**

**v.**

**Jane H. IVANCOVICH, Appellee.**

**No. 2 CA–CIV 1807.**

Court of Appeals of Arizona,
Division 2.

Oct. 1, 1975.

Rehearing Denied Nov. 7, 1975.
Review Denied Dec. 9, 1975.

DeConcini McDonald & Brammer, P. C., by John R. McDonald, Tucson, for appellant.

Merchant, Lohse & Bloom, by Cliffton E. Bloom, Tucson, for appellee.

## OPINION

HOWARD, Chief Judge.

This is an appeal from a decree of dissolution of marriage in which appellee was awarded the family residence and appellant was awarded what was determined to be community bonds.

Appellant presents two questions on appeal—whether the trial court was correct in its determination that the family residence was community property and whether, assuming it was correct, it abused its discretion in dividing the community property.

The facts most favorable to affirming the court below are as follows: Byron and Jane Ivancovich were married on October 22, 1937 in Tucson. Appellant, in addition to cash and notes, owned at the time of the marriage, a homestead existing of 530 acres in the Catalina Foothills in Tucson. He was a member of the State Bar of Arizona and was employed as property manager for his father's estate and also acted as trustee and executor in several matters. It was from these sources that community income was derived. In addition to community income, appellant received separate income during the years 1943 through 1952 in the sum of $128,619. In the years 1953 to 1963, appellant amassed separate property which consisted of tax free municipal bonds in the sum of $679,341.10 and $97,108.21 in cash used to purchase realty contracts and, in 1964, to purchase an additional $126,000 in municipal bonds. The cash used to purchase the foregoing came from the estate of appellant's father, sale of the homestead, and from the sale of other bonds.

During the entire period of the marriage from 1937 to 1973, appellant had such ab-

solute and complete control of all community finances that appellee had never been permitted to draw upon any community bank account or joint checking account. Furthermore, appellant never informed appellee of his separate finances or the extent and nature of the community assets and finances. During the marriage appellant did not pay for or purchase appellee's clothes or automobile; she paid for them from her separate funds.

In 1950 appellee received a substantial gift from her father consisting of 500 shares of Class A General Motors stock, which was subsequently split into 3,000 shares of General Motors common stock. The income therefrom was used by appellee to purchase her clothes, books and personal needs and almost every week thereafter she used a portion of her own funds to supplement the food allowance given her by appellant. Appellee received a substantial inheritance in 1971 after both her parents had died, which she kept in a separate checking and savings account under her exclusive control. From 1958 through 1973, the expenses in connection with the maintenance, upkeep and management of the family residence were paid by appellee from her separate funds and during that period appellee spent $163,681.92 of her separate funds ($24,025.99 for patio construction and landscaping, $17,350.13 for general repairs, replacement of appliances, renovation of kitchen, painting and plumbing repairs and the balance for the payment of household costs, including wages paid to maids and gardeners).

Appellant testified that he expended all the community income for community expenses except for the sum of $24,492, which he used to purchase tax free municipal bonds.

On April 26, 1951, a lot on which the residence at 50 Calle Belleza is now located was deeded from Esther Richardson to "Byron Ivancovich and Jane H. Ivancovich, husband and wife." The consideration for the deed, approximately $7,000, was paid to the escrow agent by three separate checks drawn on two accounts which were controlled exclusively by Mr. Ivancovich and which admittedly had been used as a depository for both separate and community funds.

Construction on the house began in the latter part of 1951 and was completed sometime in 1952. The construction costs were approximately $60,000 paid by checks drawn on the same two accounts, and approximately $3,200 contributed by appellee's father for initial landscaping. In addition to these expenditures, appellee spent approximately $24,000 from her separate funds for patio construction subsequent to the completion of the house.

The trial court based its ruling on the theory that separate and community funds had been co-mingled and could not be traced. Appellant argues that they can be traced. Even assuming arguendo that appellant's position is correct, the record shows the home to be community property. Where the husband pays for real property and causes it to be given in the name of the husband and wife, the law presumes a gift from the husband resting upon the proposition that he is discharging his legal duty to provide support for his wife. *Becchelli v. Becchelli,* 109 Ariz. 229, 508 P.2d 59 (1973). This presumption may be rebutted by clear and convincing evidence. *Becchelli v. Becchelli,* supra. There was no such evidence in this case. It was not until the divorce proceedings that appellant made any claim that the home was his separate property. This case is not unlike *Blaine v. Blaine,* 63 Ariz. 100, 159 P.2d 786 (1945). The trial court did not err in concluding that the residence was community property.

Turning our attention to the division of community property, appellant valued the home at $115,000, while appellee valued it at $100,000. Since appellant only received the community municipal bonds with a value of approximately $24,500, he attacks the distribution as inequitable. A. R.S. Sec. 25–318 requires that the commu-

nity property be divided equitably and without regard to marital misconduct. Although there is no requirement of equality, *Armer v. Armer*, 105 Ariz. 284, 463 P.2d 818 (1970), a division of the community property should be substantially equal in the absence of some reason requiring otherwise. *Britz v. Britz*, 95 Ariz. 247, 389 P.2d 123 (1964).

In dividing community property, the court can take into consideration the capital expenditures made on the property from the separate funds of a spouse. *Laughlin v. Laughlin*, 61 Ariz. 6, 143 P.2d 336 (1943); *McFadden v. McFadden*, 22 Ariz. 246, 196 P. 452 (1921). It is evident that the trial court not only considered the capital contributions which appellee made from her separate funds, but also considered the other expenses which she paid from her separate funds. Could the trial court in deciding what was an equitable distribution of the community property consider these other expenses? Prior to the enactment of the revised versions of A.R.S. Sec. 13–803 and Sec. 25–319, both effective August 8, 1973, it was clear that the primary duty was on the husband to support and maintain his wife. *Williams v. Williams*, 29 Ariz. 538, 243 P. 402 (1926).[1] The support that the law requires the husband to furnish is such as is reasonable considering his earning ability, means, situation and condition in life. *Burns v. Stewart*, 290 Minn. 289, 188 N.W.2d 760 (1971); *Commonwealth ex rel. Maliza v. Maliza*, 229 Pa.Super. 108, 324 A.2d 386 (1974); 41 C.J.S. Husband and Wife Sec. 15, p. 412. There is no doubt that the monies expended by appellee from her separate funds were for items which her husband had the means to provide and were befitting the parties' station in life.

Again, it is clear that at least prior to August 1973, the duty of the husband to support his wife arose out of the relationship and existed without reference to his wife's separate estate or independent means and the husband had no right to require her to resort to her separate estate to support herself. *In re Ferrall's Estate*, 41 Cal.2d 166, 258 P.2d 1009 (1953); *Pezas v. Pezas*, 151 Conn. 611, 201 A.2d 192 (1964); *In re Rinehart*, 66 N.J.Super. 90, 168 A.2d 448 (1961); *Phillips v. Phillips*, 1 A.D.2d 393, 150 N.Y.S.2d 646 (1956); *Tausik v. Tausik*, 38 Misc.2d 11, 24, 235 N.Y.S.2d 776 (1962); 41 Am.Jur.2d Husband and Wife, Sec. 332. The effect of appellant's failure to provide appellee with sufficient funds for food, personal needs, and maintenance and upkeep of the home, was to enhance his separate estate by freeing funds which should have been used for community expenses. The trial court, therefore, did not err, when it considered the entire sum of $163,681.92 expended by appellee from her separate estate. We do not agree with appellant that this amounted to a consideration of marital misconduct contrary to A.R.S. Sec. 25–318.

Affirmed.

KRUCKER and HATHAWAY, JJ., concurring.

---

1. A.R.S. Sec. 13–803 provides that a *married person* who has sufficient ability to provide for his or her spouse's support and who is able to earn the means for said spouse's support, who refuses or neglects to provide support, is guilty of a felony. A.R.S. Sec. 25–215(B) provides that either spouse may contract debts and in an action on such debt, the spouses shall be sued jointly, and their obligation shall be satisfied first from the community property and secondly from the separate property of the spouse contracting the debt or obligation.